People of the State of Illinois, Plaintiff-Appellee, v. Sylvester Lomax, Defendant-Appellant.

Gen. No. 53,940.

First District, Fourth Division.

June 26, 1970.

■■■■■■■■■■■■■■■

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore A. Gottfried and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Anthony Montelione, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED
Murder. Ill Rev Stats 1965, c 38, § 9–1.

JUDGMENT
After a jury trial, defendant was found guilty and sentenced to a term of 15 to 50 years.

CONTENTIONS RAISED ON APPEAL
1. The prosecutor prejudiced defendant when he referred to a statement he had agreed not to introduce.
2. The prosecutor prejudiced defendant when he offered his personal opinion of defendant's guilt.
3. Defendant was deprived of a fair trial by the way in which the trial judge directed a verdict in favor of a codefendant.
4. Defendant was prejudiced by the trial judge's remarks concerning defense counsel's conduct.
5. The indictment was fatally defective in that a variance existed between the victim's name as set out in the indictment and the victim's real name.

We consider it significant that defendant does not question the sufficiency of the evidence to establish his guilt beyond a reasonable doubt.

EVIDENCE
It was stipulated that at about 11:00 p. m. on July 3, 1966, a police officer, responding to a call, found

Charles Lanier lying on a sidewalk in Garfield Park. He was pronounced dead on arrival at Cook County Hospital, the cause of death attributable to a gunshot wound entering the left side of the back and out the right front chest cavity.

Chester Rockett, for the State:

He saw the victim at Garfield Park on July 3, 1966, around 1:00 or 2:00 p. m., where they met with ten other members of their baseball team to play a game which lasted until dark. After winning the game, they decided to drink some beer, which they purchased at approximately 8:00 p. m. They sat on some benches in the park and drank until 11:00 p. m.

The witness was standing up, when Lanier said, "Look at all the fellows behind us." He heard a name being shouted and saw "fifteen or twenty, maybe more," coming towards them. Lanier shouted a warning that they had a gun and got up to run when the group started shooting. Lanier was shot almost instantly, as was another fellow, Clifford Faulkner.

Love Davis, for the State:

He is a police officer, and on the date in question was assigned as a plainclothes gang officer in the 11th District. He investigated the case by interviewing several bystanders at the scene and "scouting around in the neighborhood." He received a radio call and went to 5th and Homan where he talked with another officer and a citizen, Maurice Bell. He then proceeded to 1114 Homan where he arrested defendant and Curtis Dotson.

Maurice Bell, for the State:

On the night in question, he was at home across the street from Garfield Park and saw 15 or 20 boys coming south on Central Park from 5th Avenue. In the group he recognized defendant, whom he had known previously. Defendant was carrying a rifle.

Curtis Dotson, for the State:

He was with defendant and 15 or 20 other fellows on the evening of July 3, 1966, when they went into Garfield Park. Defendant was carrying a rifle. They came upon some fellows drinking in the park, and about 3 or 4 shots were fired. He saw someone on the bench get shot. He was with defendant later that evening when both of them were arrested.

Sylvester Lomax, in his own behalf:

On July 3, 1966, he was employed by the YMCA to keep a group called the Roman Saints out of trouble. He had been with a large group of kids at a dance at St. Philip's, but he left the group along with Curtis Dotson and a boy called "Speedy." At no time on that evening did he have a rifle in his hands. He did see one being carried by "Speedy" who gave the rifle to Dotson at Jackson and Homan Avenues. Defendant then separated from Dotson and "Speedy" and the closest he got to the baseball field was a block and a half. He did hear some shots coming from the area of Garfield Park.

OPINION

Defendant contends that the prosecutor prejudiced defendant on two occasions during trial. Initially he objects to the prosecutor's reference to defendant's confession, which the prosecutor had advised the court before trial would not be used by the State. The reference to the statement came on direct examination of defendant when the following colloquy took place:

> Defense Counsel: "Q. Did you at any time between the time you were arrested Sunday and Tuesday have any sleep?"
>
> Defendant: "A. No, sir."
>
> Prosecutor: "Objection to that question."
>
> The Court: "Strike it."
>
> Prosecutor: "His confession, your Honor, the confession or any confession is not in issue here."
>
> The Court: "That is why I said strike it."

160

No attempt was made by the State to introduce a confession or statement into evidence, and the record contains nothing further in regard to it in the presence of the jury. Defense counsel made no objection to the prosecutor's remark. The line of questioning by defense counsel preceding the prosecutor's above-quoted statement was objected to by the prosecutor on two occasions. Defense counsel, however, persisted in his inquiry into what may have transpired immediately subsequent to defendant's arrest. The questioning dealt specifically with defendant's detention and interrogation by the police.

Defendant places reliance on reversal of a conviction by another Division of this court in People v. Mwathery, 103 Ill App2d 114, 243 NE2d 429. There, a pretrial agreement not to use defendant's statement was breached when, on redirect examination, the State's accomplice witness testified that the reason he had made a confession was that the police had shown him a statement already signed by the defendant. Proper and timely objection then made by defense counsel was overruled and a motion for mistrial was denied. In closing argument, the prosecutor referred again to the witness' testimony and to the defendant's statement. This court found that the trial court's error and the prejudicial comment by the prosecutor, standing alone, might not have required reversal had it not been for other prejudicial matters in the case.

██ We believe that there are significant distinctions between Mwathery and the case at bar. As we have already mentioned, that court did not consider the episode sufficient, in itself, to require reversal. Also, in Mwathery there were both timely objection and motion for mistrial, whereas at the instant trial no objection was made to the prosecutor's remark. Thus, the point is deemed to have been waived. People v. Thigpen, 33 Ill2d 595, 598, 213 NE2d 534; People v. Sledge, 71

Ill App2d 285, 290, 218 NE2d 845. In contradistinction to Mwathery, the prosecutor's comment here did not occur during the State's examination of a witness or in closing argument. The line of questions being utilized by defense counsel permitted defendant to discuss his period of detention during which the statement was purportedly given. The State objected to the defense counsel's tactic and the objection was sustained. When identical questioning continued, the prosecutor again objected and, in effect, briefly described as his ground for objection that the kind of testimony being elicited would be relevant only as to the voluntariness of a confession. We do not view this as a violation of the pretrial agreement. Further, the State's Attorney's comment may be considered as having been invited by defense counsel's persistence in his improper line of questioning. See People v. Burage, 23 Ill2d 280, 283, 178 NE2d 389; People v. Thigpen, supra.

■ On oral argument in this court, defense counsel sought to attribute to this point federal constitutional proportions, citing Chapman v. California, 386 US 18, 23–24; and Fahy v. Connecticut, 375 US 85, 86–87. As we have already mentioned, we believe that the point was waived in its entirety for purposes of this appeal, but if this were not so, we would also conclude that the State's Attorney's comment did not offend the rule of those cases. The instant defendant does not argue that the evidence properly introduced was insufficient to establish defendant's guilt beyond a reasonable doubt. We believe that it adequately did so. Based on our study of the entire record, we also believe that the prejudice complained of was harmless beyond a reasonable doubt.

■ Defendant also contends that the prosecutor prejudiced defendant during closing argument by offering his personal opinion of defendant's guilt. The alleged improper comment followed the State's summary

162

of the evidence against defendant and was, in pertinent part, as follows:

> We are here to protect even the defendant Lomax. Because if he is not guilty, ladies and gentlemen, it isn't our job to put him in the penitentiary. But we are saying to you right now that that defendant is guilty of murder and the murder of Charles Lanier. Purely and simply that.

Although it is improper for a prosecutor to inform the jury of his individual opinion or belief of defendant's guilt (People v. Hoffman, 399 Ill 57, 65–66, 77 NE2d 195), it is proper for him to argue or express an opinion that defendant is guilty, "where he states, or it is apparent . . . that such opinion is based solely on the evidence." People v. Williams, 26 Ill2d 190, 193, 186 NE2d 353; People v. Vasquez, 118 Ill App2d 66, 71–72, 254 NE2d 617. The State had presented and summarized its case against defendant and we find it apparent that the prosecutor's statement in closing argument is an opinion based on that evidence. Accordingly, we find that defendant was not deprived of a fair trial in this regard.

It is further argued by defendant that he was deprived of a fair trial when, at the close of the State's case, the trial judge directed the jury to return a verdict of not guilty as to a codefendant. Motions for directed verdicts were presented by both defendants in camera. After ruling on the motions, the judge called the jury into the courtroom and instructed them as follows:

> . . . at this time on motion of the counsel for defendant Willie Clemons I find that there is insufficient evidence against Willie Clemons to find a verdict of guilty, and I direct that the jury find a verdict of not guilty.

After the jury signed such a verdict, the judge stated:

Judgment is entered on the verdict to Willie Clemons, and he is discharged from the case. We will proceed then with Sylvester Lomax, . . . .

Defendant has offered little substantive argument to support this claim, except to assert that the judge, by finding the codefendant not guilty, inferred to the jury that defendant was guilty. We do not accept this as ground for reversal. The court's method of directing the verdict was within the statutory requirement and we find it unobjectionable. Ill Rev Stats 1967, c 38, § 115–4 (k). We also note that no objection was made to the court's method of directing the verdict, nor did defense counsel suggest any alternative.

■ Complaint is also made that the trial judge repeatedly displayed hostility to defense counsel which prejudiced defendant in the eyes of the jury. The first alleged incident of error was directed at counsel for the codefendant, who was cautioned for the second time not to make speeches in the jury's presence. The other incident was an admonition to this defendant's counsel to keep his questions in a proper context and to refrain from making speeches to the jury. Defense counsel, by sustained conduct, brought the cautionary remarks upon themselves and cannot now claim error. People v. Smith, 66 Ill App2d 257, 213 NE2d 135; People v. Allum, 78 Ill App2d 462, 466, 223 NE2d 187. In addition, the judge's remarks were not of such a harsh nature as to prejudice defendant before the jury. Here, again, the record discloses no objections by defense counsel. People v. Jones, 29 Ill2d 306, 194 NE2d 239.

■ Defendant's final contention is that the indictment was fatally defective because it named the victim as Charles Linear, whereas the evidence introduced at trial referred to the victim as Charles Lanier. Even though there is a variance in spelling, it is clear that

correct pronunciation of the two names results in practically identical sounds. In this situation, there is not a fatal variance, the doctrine of "idem sonans" being properly applicable, and the names are held to designate the same person. People v. Schneider, 360 Ill 43, 51, 195 NE 430; People v. Jankowski, 391 Ill 298, 301–302, 63 NE2d 362.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and LEIGHTON, JJ., concur.