THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THOMAS J. SMITH, a/k/a Thomas J. Schmidt, Defendant-Appellant.

Second District (1st Division)   No. 75-482

Opinion filed September 2, 1976.

Ralph Ruebner and Michael Mulder, both of State Appellate Defender's Office, of Elgin, for appellant.

William J. Cowlin, State's Attorney, of Woodstock (Phyllis J. Perko, of Illinois State's Attorneys Association, of Counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Following a jury trial, the defendant was convicted of theft of over $150 and sentenced to a term of not less than one year and not more than 3 years' imprisonment. He appeals, contending that the prosecutor's argument that his claim of insanity was a "last ditch defense" deprived him of a fair trial. He also contends that the court committed reversible error in submitting a verdict form, "not guilty by reason of insanity," without instructing the jury as to the consequences of that verdict.

On May 22, 1973, defendant was observed in the act of stealing an automobile from a factory parking lot and arrested after a high speed police chase. On June 8, 1973, prior to his indictment, he was committed to the Elgin State Hospital as a person in need of mental treatment. He left the hospital without permission on June 12, 1973, but was apprehended and indicted.

Defendant was placed on trial in November of 1974 after he had been found competent to stand trial. At the trial, a deputy of the McHenry County sheriff's department testified in behalf of the defendant that when the defendant was first brought in on May 22, 1973, he observed nothing unusual about him. However, on June 8, he was called to the jail and observed that the defendant was talking to himself and answering his own questions. When asked, the defendant told him that he was talking with the devil. Defendant was examined by a doctor, following which the officers signed papers committing defendant to the Elgin State Hospital.

Dr. Martinez, a psychiatrist, testified at trial that he had examined defendant late in August of 1974 to determine whether he was competent to stand trial. He said that defendant told him that at the time of his offense he felt he was possessed by creatures that were harmful, vicious and after him for some reason. The doctor concluded that defendant was suffering from chronic schizophrenia. In response to a hypothetical question which included the trial testimony Dr. Martinez was asked whether the hypothetical person might be either unable to conform his conduct to law or unable to realize the criminality of his actions at the time of the offense. The doctor responded that "there is a possibility someone under those conditions could have been suffering from an illness that would unable [sic], disable him to appreciate the full conduct." On cross-examination, Dr. Martinez conceded that there was also a possibility that the hypothetical person could conform his conduct to the requirements of the law and appreciate the criminality of his conduct. He said that he found defendant competent to stand trial and to assist in his defense. The doctor conceded also that one who was insane under the

definition posed to him—that is, of being unable to conform his conduct to the requirement of law or unable to appreciate the criminality of his act—could not be competent to stand trial.

The assistant state's attorney who had taken defendant's confession after his arrest testified for the State on the issue of defendant's sanity at the time of the offense. He stated that defendant was dirty and unkempt, did not seem to have any "drive" or spirit, and that there was no doubt that when you looked at him "you can see he is peculiar." The witness stated that defendant's responses to questions made sense, however. He was of the opinion that on May 22, 1973, the defendant was sane, able to appreciate the criminality of his conduct and was capable of conforming his conduct with the requirements of the law. He conceded that when he saw defendant in August of 1974, he was more slovenly dressed and "down" than when he had seen him in May of 1973.

The arresting officer also testified for the State that defendant, when first apprehended, gave reasonable answers to questions and was cooperative. In his opinion, the defendant was able to appreciate the criminality of his conduct. He said that defendant did not talk to himself or mention anything about devils in his presence.

The jury rejected the insanity verdict and found defendant guilty of theft over $150.

In this context, we are to first determine whether the following argument of the prosecutor, although not objected to, was plain error sufficient to reverse:

> "There is no question that the man took the car. With all due respect to Counsel, also, he's got a job to do but certainly, this was a last ditch defense, ladies and gentlemen.
> * * *
> Do you think if they thought he was insane on May 22, 1973, we would have gone through all this effort?"

Defendant relies upon the general rule that it is improper for a prosecutor to state his opinion as to a defendant's guilt or to base his argument on facts not in evidence (see, *e.g., People v. Rothe*, 358 Ill. 52, 56 (1934); *People v. Stock*, 56 Ill. 2d 461, 472 (1974)) or to make statements to the effect that if a defendant was not guilty, he would not be on trial. See, *e.g., People v. King*, 276 Ill. 138, 156 (1916); *People v. Fuerback*, 66 Ill. App. 2d 452, 456 (1966).

■■ We agree that the argument of the prosecutor that the sanity defense was a "last ditch defense" was improper. However, the record before us shows little merit in the insanity defense, and the remarks were not of the flagrant nature which require reversal. We therefore hold that the failure of defense counsel to object waived any error. See *People v. Smothers*, 55 Ill. 2d 172, 176 (1973); *People v. Hampton*, 44 Ill. 2d 41, 46

(1969). See also *People v. Lomax*, 126 Ill. App. 2d 156, 163 (1970).

■■ The prosecutor's comment that the State would not have gone ahead with the trial if it thought that defendant was insane at the time he committed the crime, was arguably an invited response to defense counsel's argument that Boback and the arresting officer "have somewhat of an interest in the case" which "may reflect in their testimony," and several references to the effect that the state's attorney's job is to put people in jail. (See *People v. Johnson*, 102 Ill. App. 2d 443, 454-55 (1968).) Nevertheless, the argument was improper. We also conclude, however, that the defendant has waived the possible claim of error because of his failure to object to the argument.

■■ *People v. Stock*, 56 Ill. 2d 461, (1974), and *People v. Rothe*, 358 Ill. 52 (1934), cited by the defendant, involve arguments which went far beyond those found on this record. Compare also *People v. Weathers*, 62 Ill. 2d 114, 118-19 (1975).[1]

Defendant also contends that the rejected verdict form, which contained the language "not guilty by reason of insanity and we further find that he is still insane," was improper and prejudicial in the absence of further explanation. He argues that whenever the defense of insanity at the time of the commission of the offense has been raised, an instruction should be given to advise the jury that a verdict of not guilty by reason of insanity does not mean that the defendant will be released upon the public before he recovers his sanity. He argues that this is necessary to avoid the natural assumption of jurors that if they acquit a defendant because of insanity, he will necessarily go free; with a corollary that without some explanation to counteract the natural assumption, the jury would be likely to convict the defendant despite their reasonable doubt of his sanity. Defendant reasons that the instruction was particularly necessary here to avoid confusion because the prosecutor had told the jury in argument that there was no evidence that defendant had recovered from chronic schizophrenia and had made reference to the defendant getting help at Menard or Joliet from psychiatrists or psychologists.

---

[1] The State has argued that the testimony is insufficient to even raise the insanity defense. In view of the State's failure to object to the giving of the insanity defense instruction we find that this argument has been precluded. We also do not reach the conflicting arguments of the parties as to whether the defendant must raise a reasonable doubt of sanity under *Mullaney v. Wilbur*, 95 S. Ct. 1881 (1975). (See, however, *James v. United States*, 350 A.2d 748, 750 (D.C. App. 1976); *cf. People v. Patterson*, 39 N.Y.2d 288, 347 N.E.2d 898, 908 (N.Y. App. 1976). Compare *State v. Hankerson*, 288 N.C. 632, 220 S.E.2d 575, 583-84 (N.C. 1975).) The issue before us is the propriety and the effect of the prosecutor's argument in a case in which, at best, there is conflicting evidence of insanity. Under any view of the State's burden of proving defendant's sanity at the time of the crime, we would conclude that the State has satisfied that burden.

■■ No cautionary instruction was submitted by the defendant, however. In addition, defendant's counsel specifically stated that he had no objection to the verdict forms. As a general rule, it is not the duty of the trial judge to issue cautionary instructions on his own unless requested. See *People v. Underhill*, 38 Ill. 2d 245, 252 (1967).

We have found no Illinois authority dealing directly with the question of the court's duty to instruct as to the consequences of a not guilty verdict on the basis of insanity at the time of the commission of the offense, whether on request or in its absence.

The question has, however, been the subject of decisions in both Federal and other State jurisdictions. Federal authority preponderates in favor of refusing to give the cautionary instruction. In *United States v. Greene*, 497 F.2d 1068, 1077 (7th Cir. 1974), the majority held that the failure of the court to give the instruction on its own motion was not "plain error." Justice Stevens dissented.[2]

While the majority did not feel it necessary to decide the question in view of the defendant's failure to submit a proper instruction, it noted that it was "arguable whether it would have been erroneous * * * to have declined to have given an instruction patterned on the suggestions of the dissenting opinion had such a request been made." The majority stated that "the more common view is that it is improper to give the instruction because it would distract the jury from the insanity issue and would invite compromise verdicts."

Defendant argues that *Lyles v. United States*, 254 F.2d 725, 728-29 (D.C. Cir. 1957), is persuasive in its requirement that the instruction be given in a jurisdiction which, like Illinois, has a statute providing that after a determination that defendant is not guilty by reason of insanity together with a determination that he has not recovered, the court shall enter an order finding him in need of mental treatment and hospitalizing him in the custody of the Department of Mental Health for a stated initial period. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—4(b). See also *State v. Krol*, 68 N.J. 236, 344 A.2d 289 (1975).) We do not so rule.

---

[2] In his dissent he noted that the defendant had requested an instruction that he would be confined in a hospital in the event of a not guilty verdict until it was safe to release him. He also noted that there was "an especially strong insanity defense" (at 1087), further noting (at 1092) "it is almost inconceivable to me that if the jury had put aside any concern about the consequences of a not guilty verdict, that they would not have entertained a reasonable doubt as to the defendant's sanity." He reasoned also that the jury should not determine the issue of guilt or innocence on the basis of their fear of how an insane man may act if acquitted (at 1090). Although agreeing that the specific instruction requested by the defendant was improper and was properly refused, Justice Stevens stated that under the circumstances, he would find that the plain error doctrine required a reversal with directions to instruct the jury that if defendant were acquitted, it would be presumed that his insanity continued and that it would be the responsibility of the government to determine the disposition to be made of the defendant and that the jury should not give any consideration to questions of such disposition or matters of punishment.

We conclude that the failure of the judge to give an instruction where none was tendered as to the consequences of a not guilty verdict based on defendant's insanity at the time the offense was committed was not reversible error under the circumstances of this case. We do not decide whether or not the instruction should be given where a proper instruction is tendered by a defendant, or whether it should be given *sua sponte* where there is a strong insanity defense. Neither reference fits this case, however.

The judgment is affirmed.

Affirmed.

GUILD, P. J., and HALLETT, J., concur.