THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEVESTER BROWN, Defendant-Appellant.

First District (4th Division)   No. 79-548

Opinion filed August 7, 1980.

James J. Doherty, Public Defender, of Chicago (Timothy K. McMorrow and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard J. Carey, State's Attorney, of Chicago (Marcia B. Orr and Kathleen Warnick, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Defendant, Levester Brown, was charged by information with aggravated kidnapping, armed robbery, kidnapping, and unlawful restraint. Following a trial by jury, defendant was found guilty on all counts. The trial court sentenced him to concurrent terms of five to seven years for armed robbery and aggravated kidnapping. On appeal defendant makes the following contentions: (1) his guilt was not established beyond a reasonable doubt; (2) he was denied a fair trial by certain prejudicial comments and rulings made by the trial court; and (3) the trial court erred in denying defense counsel's request that the jury be given "not guilty" forms for each offense charged.

We affirm.

At trial Arthur Coronado testified that at about 5 p.m. on February 12, 1977, as he was driving into his garage in Chicago a man opened his car door and sprayed a substance into his face, causing his eyes to burn and temporarily blinding him. The man then forced Coronado over to the passenger side, took his money, wallet, credit cards, driver's license and wristwatch, and drove away with Coronado still in the car. After about two hours of driving the man stopped the car. By this time Coronado was again able to see. The man walked to a nearby building and conferred with several other men. Coronado attempted to flee the car but the man caught him, pulled out a .38-caliber pistol, and threatened to kill him if he again tried to escape. He then tied Coronado up in the front seat and drove for another half hour after which he stopped and pushed Coronado out of the car. During this episode Coronado had not seen another gun, but he testified that he had felt a shotgun while in the front seat. Coronado called the police, and when they arrived gave them the license number of his car. That evening he identified the defendant in a five-man lineup and recovered his car, his driver's license, and some of his credit cards. Coronado identified defendant in court as the man who had robbed him.

On cross-examination Coronado denied that he had drunk any alcohol that day, stating that he never drank. He said defendant was wearing a brown leather jacket and a black hat at the time of the incident, a description he gave the police. He denied having told the police the man was wearing a brown sweater but did recall telling them the man was five feet, seven inches tall.[1]

Chicago police officer Walter Jucha testified that at about 7:30 p.m.

---

[1] Coronado initially expressed some confusion on this issue, stating that defendant was seven *feet* tall, however he then corrected this apparent misstatement to say defendant was five *feet*, seven *inches*.

that same evening he arrested the defendant in Coronado's car and recovered Coronado's driver's license and some of his credit cards. He did not find any guns or mace.

The sole witness presented by the defense was Chicago police officer John Williams, who had interviewed Coronado that same evening at about 7 p.m. Coronado described his assailant as five feet, seven inches tall, wearing a brown sweater. He did not mention a hat. He also told the officer that two weapons were involved, a shotgun and a .38-caliber revolver. Williams testified that he had thought he smelled alcohol on Coronado's breath, and Coronado did not speak to him in a coherent manner. However he also testified that Coronado's speech was not slurred and he had no trouble understanding what Coronado told him. Coronado was able to tell what had happened and to give a description of his car, including the license number. The officer testified that he could not say that Coronado was intoxicated, although he had indicated on his police report that Coronado had been drinking. He had never smelled mace before.

It was stipulated that if Investigator Ken Karens were called he would testify that he was an investigator on the evening in question and his opinion was that the defendant was six feet, one inch in height.

## I.

Although defendant contends that the totality of Arthur Coronado's testimony was confused and contradictory, he cites only two such contradictions. Coronado testified that his assailant was five feet seven inches tall whereas the stipulation at trial indicated the defendant was six feet one inch in height. And although Coronado testified he described defendant to the police as wearing a leather jacket and a cap, the police testimony was that he only said the man was wearing a brown sweater. In the light of the positive identification of the defendant by the witness at trial and the fact that defendant was apprehended shortly after the incident while in possession of Coronado's automobile and other possessions taken from him, we do not find these minor discrepancies to be controlling. (See *People v. Terlikowski* (1967), 83 Ill. App. 2d 307, 227 N.E.2d 521.) Coronado generally gave a clear account of the events of that evening and the jury chose to believe that account. We find no basis for disturbing their determination.

■■■ We also find no merit to defendant's contention that the State failed to prove that he was armed with a dangerous weapon when he robbed Coronado, thus establishing his culpability for armed robbery. (Ill. Rev. Stat. 1977, ch. 38, par. 18—2.) Coronado testified that the defendant incapacitated him by temporarily blinding him with a substance sprayed into his face. Defendant contends that because the substance was never identified and wore off within two hours it could not be considered a

dangerous weapon. As was stated in *People v. Dwyer* (1927), 324 Ill. 363, 365, 155 N.E.316, 317:

> "Where the weapon in question and the manner of its use are of such character as to admit of but one conclusion, the question whether or not it is deadly is one of law for the court to determine, but when the character of the weapon is doubtful or the question depends upon the manner of its use it is a question for the jury to determine from a description of the weapon, from the manner of its use and circumstances of the case."

This reasoning was applied in *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164, where the issue was whether a fingernail clipper could be considered a dangerous weapon within the meaning of section 18—2. We find, as did the court in *Robinson*, that under the circumstances of this case the question of the nature and character of the weapon used was properly left to the determination of the jury.

## II.

■■ Defendant also contends that he was denied a fair trial by certain rulings and comments of the trial judge. During final argument by the State, defense counsel was admonished by the trial court when he followed an objection to the State's argument with an attempt to immediately present counterargument to the jury. Later during the State's argument, defense counsel again attempted to interject counterargument in conjunction with an objection. The court then stated:

> "Well, here is what the Court will say: If someone makes a statement who is not making an argument, the Court will hold that individual in contempt. The Court has previously stated for counsel to make statements when they are not making arguments is out of order."

It was defense counsel's repeated refusal to adhere to the established procedure for final argument which caused the trial court to make these comments in an attempt to obtain compliance. Counsel cannot by his conduct elicit such comments and then claim error based on them. (*People v. Lomax* (1970), 126 Ill. App. 2d 156, 262 N.E.2d 63; *People v. Allum* (1967), 78 Ill. App. 2d 462, 223 N.E.2d 187.) Moreover, when counsel is properly admonished by the court, the mere fact that such comments were directed at him does not demonstrate prejudice on the part of the court. (*People v. Jerrels* (1968), 98 Ill. App. 2d 213, 240 N.E.2d 479.) In this respect this cause is clearly distinguishable on its facts from those of *People v. Lewerenz* (1962), 24 Ill. 2d 295, 181 N.E.2d 99, cited by defendant. There, on 16 occasions the trial court had criticized defense counsel for objections which our supreme court characterized as normal and brief. We find no prejudice arising from the comments of the trial judge.

■ The only other instance of alleged prejudice cited by defendant occurred when defense counsel began his cross-examination of Arthur Coronado:

"Q: Good afternoon, Mr. Coronado. Do you remember me?
A: No.
Q: Well, do you remember that I tried to talk to you earlier today?
[The State]: Objection, Judge.
The Court: Sustained.
[Defense counsel]: Well, do you remember that you refused to talk to me earlier today?
[The State]: Objection.
The Court: Sustained.
[Defense counsel]: Your Honor, may I have a side bar?
The Court: You don't need a side bar."

Although the better practice would have been to permit counsel to present the basis for this line of questioning to the court in a side bar conference, we find no prejudice arising from the denial. Clearly counsel wished to impeach the witness by eliciting the information that he had refused to be interviewed by counsel prior to trial. This was not in fact impeaching, for a witness has a right to refuse to submit to such questioning. (*People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398, *cert. denied* (1974), 417 U.S. 920, 41 L. Ed. 2d 225, 94 S. Ct. 2627; *People v. Duncan* (1913), 261 Ill. 339, 103 N.E. 1043.) Accordingly, the court did not err in sustaining the objections to this line of questioning.

## III.

■ Finally, defendant asserts that this cause must be reversed and remanded because the trial court refused his request that the jury be given separate "not guilty" forms for each charge. Instead the jury was given one "not guilty" form along with separate "guilty" forms for each charge. Defendant contends that this was in violation of the directives of section 115—4(j) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 115—4(j)). That section provides in pertinent part: "Unless the affirmative defense of insanity has been presented during the trial, the jury shall return a general verdict as to each offense charged." Of course, in this cause the jury did not return general verdicts of guilty as to each offense charged. But more importantly, the failure to provide them with separate "not guilty" forms did not preclude their compliance with section 115—4(j) in the event they had reached verdicts of not guilty as to some of the charges. This practice was approved in *People v. Cole* (1977), 50 Ill. App. 3d 133, 365 N.E.2d 133, *cert. denied* (1978), 435 U. S. 944, 55 L. Ed. 2d 541, 98 S. Ct. 1526, and although the court there did not specifically refer to section 115—4(j), their analysis is applicable to its requirements:

"We initially note, as does the defendant, that the procedure followed by the trial court judge is the procedure recommended by the IPI, Criminal, and the Committee Notes. We do not believe that this procedure prejudiced defendant. The failure on the part of the jury to sign a particular verdict form is by law a verdict of not guilty on that charge. (*People v. Potts*, 403 Ill. 398, 86 N.E.2d 345.) We thus do not agree with defendant's suggestion that the forms may have confused the jurors into believing that they either had to sign all seven guilty forms or sign only the not guilty form. For example, if the jury had desired to find defendant guilty of two counts and not guilty of the other five, it could easily have done so by signing only the two desired forms. The forms did not prevent the jury from being deadlocked regarding any of the charges. By submitting the forms in the manner recommended, the trial court, in our opinion, chose a method simpler than submitting seven guilty forms and seven corresponding not guilty forms. On this record we can find no errors in the manner of submitting the verdict forms." (50 Ill. App. 3d 133, 147, 365 N.E.2d 133, 143; also see *People v. Lewis* (1977), 51 Ill. App. 3d 109, 366 N.E.2d 446; *People v. Gargano* (1973), 10 Ill. App. 3d 957, 295 N.E.2d 342.)

Because the forms given to the jury thus did not preclude them from in effect returning separate general verdicts of not guilty, we find no error in the procedure utilized. *People v. Farrow* (1976), 41 Ill. App. 3d 1000, 354 N.E.2d 917, cited by defendant, merely approved the practice of giving the jury separate "not guilty" forms for each charge; the issue now before us was not addressed by that court.

The judgment of the trial court is affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.