942 P.2d 1159

STATE of Arizona, Appellee,

v.

Donald Martin RIGGS, Appellant.

STATE of Arizona, Appellee,

v.

Darren Allen TAGGART, Appellant.

Nos. CR–96–0351–PR, CR–96–0342–PR.

Supreme Court of Arizona,
En Banc.

July 15, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Joseph T. Maziarz, Assistant Attorney General, Kent E. Cattani, Assistant Attorney General, Phoenix, for Appellee.

Neal W. Bassett, Phoenix, for Appellant Donald Martin Riggs.

Dean W. Trebesch, Maricopa County Public Defender by Edward F. McGee, Deputy Maricopa County Public Defender, Phoenix, for Appellant Darren Allen Taggart.

## OPINION

MOELLER, Justice.

In *State v. Taggart*, 186 Ariz. 569, 925 P.2d 710 (App.1996), a panel of Division One of the Court of Appeals held, in an opinion authored by Judge Kleinschmidt, that a criminal defendant is *always* permitted to bring out at trial a victim's refusal of a pretrial interview with the defendant. In *State v. Riggs*, 186 Ariz. 573, 925 P.2d 714 (App.1996), a different panel of Division One held, with Judge Kleinschmidt dissenting, that a criminal defendant is *never* permitted to bring out at trial a victim's refusal of a pretrial interview with the defendant when the victim's sole

reason for refusing the interview is that the victim had a constitutional right to do so.

Both panels relied in part on A.R.S. § 13–4433(E), which provides:

E. If the defendant or the defendant's attorney comments at trial on the victim's refusal to be interviewed, the court shall instruct the jury that the victim has the right to refuse an interview under the Arizona constitution.

We granted review in both cases and consolidated them to resolve the conflict and to provide guidance for future cases.

### FACTS

#### I. Donald Martin Riggs

In June 1993, defendant Donald Martin Riggs[1] and his business partner, Timothy Enos, started a dating service: "Personal Gay Matching Service" ("PGMS"). In December 1993, Riggs tried to cash a PGMS check made payable to him and purportedly signed by Enos. The police found that Riggs possessed five additional checks that also were payable to him and purportedly were signed by Enos. Riggs was indicted on six counts of forgery.

At trial, Enos testified that he had neither signed nor authorized Riggs to sign his name to any of the checks that were in Riggs' possession. On cross-examination, defendant asked Enos if he had refused a pretrial interview. The state objected on relevance grounds, and the trial court sustained the objection. Accordingly, Enos did not answer defendant's question. Later, outside the jury's presence, defendant questioned Enos further. Enos vaguely recalled being told that defendant had asked for a pretrial interview and that he was glad he did not have to comply with the request. After hearing Enos' testimony, the trial judge found that the interview request had been appropriately conveyed to him. In the jury instructions, the judge informed the jury that the victim, Enos, had a constitutional right to refuse to grant a pretrial interview.

The jury convicted Riggs on all counts. The court of appeals affirmed the trial court's findings holding, *inter alia*, that the "defendant's inquiry into the victim's exercise of the right to decline a pretrial interview was improper." *State v. Riggs*, 186 Ariz. 573, 578, 925 P.2d 714, 719 (App.1996).

#### II. Darren Allen Taggart

On March 8, 1994, defendant Darren Allen Taggart confronted Juan Rivera and Octavio Patino who were riding their bicycles home from the restaurant where they worked. Rivera and Patino claimed that Taggart shined a flashlight in their faces, brandished a knife, and demanded that they "give [him] all [they] got."

Taggart was charged with two counts of aggravated assault. During Taggart's trial, defense counsel attempted to ask Rivera if he had refused to grant a pretrial interview. Before he could finish the question, the state objected,[2] prompting discussion off the record and out of the hearing of the jury. Later, again outside the presence of the jury, but on the record, defense counsel argued that the victim's refusal to grant a pretrial interview was relevant because it showed bias. She explained that "a person who has allegedly been assaulted at knife point would be willing to come in and grant a thirty-minute interview because it would be significant enough of an event in their life to participate." The trial judge disagreed and found that the victim's exercise of his constitutional right to refuse the pretrial interview did not show that the victim was biased against the defendant. Consequently, the judge determined that the victim's refusal was irrelevant. The judge did not inform the jury that the victim had a constitutional right to refuse to grant a pretrial interview. The jury found Taggart guilty of the two offenses.

On appeal, the court of appeals found that the trial court's limitation of defendant's cross-examination of the victim violated defendant's constitutional right to confront witnesses. *State v. Taggart*, 186 Ariz. 569, 571, 925 P.2d 710, 712 (App.1996). The court of

---

1. Defendant Riggs died on June 6, 1996.

2. Defense counsel was only able to ask, "You refused to grant—" before the state cut her off with an objection.

appeals nevertheless found the error to be harmless and affirmed the convictions. We granted review in both cases pursuant to Ariz. R.Crim. P. 31.19. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3) and Ariz.Rev.Stat. Ann. ("A.R.S.") § 12–120.24.

## DISCUSSION

### I. Victim's Alleged Constitutional Right Not to Be Cross–Examined About Refusal of Pretrial Interview

The state argues that the Victim's Bill of Rights implicitly provides victims a constitutional right not to be cross-examined on their refusal to grant a pretrial interview. According to the state, a victim's right to refuse an interview is analogous to a defendant's Fifth Amendment right to remain silent. U.S. Const. amend. V ("No person ... shall be compelled in any criminal case to be a witness against himself."). The United States Supreme Court has broadened the scope of the defendant's right to remain silent to include the right not to be questioned about the exercise of that right. *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). The Court explained that *Miranda* warnings do not explicitly assure a criminal defendant that the defendant's post-arrest silence will carry no penalty. *Id.* However, because the defendant's silence immediately after arrest is "insolubly ambiguous," impeaching a defendant with such silence violates a defendant's right to remain silent and consequently, violates the Due Process Clause of the Fifth and Fourteenth Amendments. *Id.* at 619, 96 S.Ct. at 2245.

Likewise, according to the state, crime victims are informed of their state constitutional right to refuse a pretrial interview. The Victim's Bill of Rights does not inform the victim that exercising such rights may penalize the victim. The state argues, however, that implicit within the Victim's Bill of Rights is an assurance that the victim's refusal to grant an interview will not be used to create an undesirable inference against the victim. Thus, the state claims, the victim has a constitutional right never to be cross-examined on the victim's refusal of a pretrial interview. We disagree.

The right to refuse a pretrial interview is not analogous to a defendant's right to remain silent because the rights derive from two different purposes. As the court of appeals in *Taggart* noted,

A defendant's right to remain silent springs from the constitutional safeguard against self-incrimination. It is rooted in the "distrust of self-deprecatory statements" and the desire to avoid putting a defendant in the "cruel trilemma of self-accusation, perjury or contempt."

*Taggart*, 186 Ariz. at 572, 925 P.2d at 713 (citations omitted). A victim's right to refuse a pretrial interview, however, stems from "the desire to protect a victim's privacy and minimize contact with the defendant" prior to trial. *Id.* This distinction is especially relevant when one attempts to discern whether the differing purposes are furthered by the limitation on questioning.

■ Unlike a defendant's right to remain silent, the purpose underlying a victim's right to refuse pretrial interviews is not advanced by precluding comments on the victim's refusal. Commenting on a criminal defendant's exercise of the right to remain silent diminishes the benefit of that right by suggesting to the jury that the defendant is culpable. In contrast, the benefits of the victim's right to refuse a pretrial interview—protection of privacy and minimizing contact with the defendant prior to trial—are not diminished by the defendant's comments. Because the Victim's Bill of Rights does not, and could not, allow the victim to refuse to testify at trial, contact with the defendant is not completely avoidable. *S.A. v. Superior Ct.*, 171 Ariz. 529, 531, 831 P.2d 1297, 1299 (App.1992). Thus, asking the victim at trial about his or her refusal to grant a pretrial interview does not result in any greater breach of the victim's privacy, or greater contact with the defendant, than is already necessary.

■ Moreover, if, in a given case, the victim's state constitutional rights conflict with a defendant's federal constitutional rights to due process and effective cross-examination, the victim's rights must yield. *State ex rel. Romley v. Superior Ct.*, 172 Ariz. 232, 236,

836 P.2d 445, 449 (App.1992.) The Supremacy Clause requires that the Due Process Clause of the U.S. Constitution prevail over state constitutional provisions. U.S. Const. art. VI, cl. 2 ("This Constitution . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution . . . of any State to the Contrary notwithstanding."); *Romley,* 172 Ariz. at 236, 836 P.2d at 449. As a result, the victim has no blanket constitutional right to be free from questioning at trial about the victim's refusal of a pretrial interview.

## II. Defendant's Alleged Constitutional Rights to Confrontation and to Cross-Examination Concerning Refusal of Interview

Defendants contend that the trial courts' decisions to restrict the cross-examinations of the victims violated their federal and state constitutional rights to confront and cross-examine the witnesses against them. The Sixth Amendment to the United States Constitution guarantees to criminal defendants the right to confront adverse witnesses. U.S. Const. amend. VI. The U.S. Supreme Court acknowledged confrontation as a fundamental right and, through the Fourteenth Amendment, extended its application to criminal defendants in state proceedings. *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). Integral to the right of confrontation is the defendant's right to cross-examine adverse witnesses. *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *State ex rel. Collins v. Superior Ct.,* 132 Ariz. 180, 187, 644 P.2d 1266, 1273 (1982); *State v. Dunlap,* 125 Ariz. 104, 105, 608 P.2d 41, 42 (1980).

■ The criminal defendant's right to cross-examine, however, is not without limitation. *State v. Jones,* 110 Ariz. 546, 550, 521 P.2d 978, 982 (1974). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about . . . interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106

S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *see State v. Fleming,* 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977) (holding that the "right to cross-examination must be kept within 'reasonable' bounds and the trial court has discretion to curtail its scope").

This court, in *Fleming,* found it difficult to delineate a bright-line distinction between excessive and reasonable restrictions on the scope of cross-examination. *Id.* Consequently, we held that such a distinction must be determined on a case-by-case basis and set forth a test: "The test is whether the defendant has been denied the opportunity of presenting to the trier of fact information which bears either on the issues in the case or on the credibility of the witness." *Id.*

■ In the instant cases, defendants claim that the victims' refusals of pretrial interviews bear on the victims' credibility. We disagree. In both cases, we find nothing in the record that would indicate that the reason for the victims' refusal was anything other than the fact that they had a constitutional right to so refuse. Absent some showing that the victims refused the interviews for a reason or in a manner bearing on their credibility, we will presume that they refused the interview solely because they had a constitutional right to do so. *See Fleming,* 117 Ariz. at 126, 571 P.2d at 272 (trial court did not abuse discretion when defendant failed to request a hearing *and* failed to show that further cross-examination would have revealed some fact that directly bore on the credibility of the prosecution's key witness). Because defendants failed to make any such showing, the trial courts' limitations on defendants' cross-examinations did not violate defendants' constitutional rights to confront adverse witnesses, to cross-examine, or to present a defense.

■ Riggs makes a secondary constitutional argument. He contends that the limitation on cross-examination is unconstitutional because it prejudices him in two ways: First, the inability to conduct pretrial interviews results in blind cross-examinations of the victims. Consequently, he must ask numerous exploratory questions, which may seem to the jury as if he is intentionally

protracting the trial. Second, his questions may touch on emotional or embarrassing issues. He argues that jurors need to know that he was unable to interview the victim beforehand, and as a result, any questions that upset the victim were unintentional.

Admittedly, the jury's perception of the defense attorney's cross-examination of the victim can play a crucial role in a criminal trial. But even with a pretrial interview, however, it is impossible to forecast how the victim and defense counsel will interact and how the jury will perceive that interaction. We are unwilling to permit irrelevant evidence to come in merely to allay defendant's speculative concerns of how the jury will perceive him. It is the defense attorney's responsibility to select carefully pertinent questions. Defense counsel has an opportunity in closing argument to ameliorate any negative perception without referring to the irrelevant evidence.

## III. Construction of A.R.S. § 13–4433(E)

In 1989, before the people adopted the broad-based Victim's Bill of Rights, this court exercised its rulemaking authority to recognize victims' rights within the court system. These rules were adopted to "preserve and protect a victim's right to justice and due process." Ariz. R.Crim. P. 39(b). We adopted a new rule (Rule 39) and promulgated modifications to several existing rules of criminal procedure (Rules 9, 15, 32). Ariz. R.Crim. P. 39 cmt. Initially, Rule 39(b)(9) provided .that a victim had the "right to refuse to be interviewed." Ariz. R.Crim. P. 39(b)(9) (1989). This Rule provided, however, that only in limited circumstances could a victim refuse a *deposition*—for example, when the defendant acted pro se or if the defendant was to be personally present at the deposition. *Id.*

One year later, the Arizona electorate voted to amend the Arizona Constitution to, in effect, broaden the scope of victims' rights. The constitutional amendment was called the

"Victim's Bill of Rights," and provided in part:

> Section 2.1 (A) To preserve and protect victims' rights to justice and due process, a victim of crime has a right:
>
> . . .
>
> 5. To refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant.

Ariz. Const. art. II, § 2.1(A)(5). In 1991, as part of the Victims' Rights Implementation Act,[3] the Arizona legislature enacted the following statute:

> E. If the defendant or the defendant's attorney comments at trial on the victim's refusal to be interviewed, the court shall instruct the jury that the victim has the right to refuse an interview under the Arizona constitution.

A.R.S. § 13–4433(E) (Supp.1996) (renumbered by 1997 Ariz. Sess. Laws Ch. 216). That same year, this court amended its rules to conform to the constitutional amendment and the enabling legislation.

The state and defendants disagree as to what A.R.S. § 13–4433(E) means. The state reads the statute to mean that any comments at trial regarding the victim's refusal to be interviewed are *improper,* and thus, the authorized jury instruction is curative, to be availed when such comments are erroneously received. Defendants, however, read the statute to *authorize* cross-examination of a victim regarding the victim's refusal of a pretrial interview. Defendants contend that the jury instruction merely provides guidance to a jury when a defendant properly and strategically decides to inquire into a victim's refusal to be interviewed. Consequently, the state, as a matter of statutory construction, would *never* allow a defendant to cross-examine the victim regarding the victim's refused interview and defendants would *always* allow such comments. We believe that both constructions of A.R.S. § 13–4433(E) go too far.

---

**3.** The Victim's Bill of Rights authorizes the state legislature to create laws implementing the rights, stating: "The legislature ... [has] the authority to enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims by [the Victim's Bill of Rights].... " Ariz. Const. art. II, § 2.1(D).

We have stated that "[w]hen interpreting the meaning of particular statutory provisions, we seek to discern the intent of the legislature. We look primarily to the language of the statute itself and give effect to the statutory terms in accordance with their commonly accepted meanings." *State v. Reynolds,* 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992). Furthermore, if a statute's language is clear and unambiguous, 'we must give effect to that language and need not employ other rules of statutory construction.[4] *Id.; Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). We believe that A.R.S. § 13-4433(E) is clear and unambiguous—the statute plainly states that when the defendant comments during trial about the victim's refusal of a pretrial interview, the court should inform the jury that the victim has a constitutional right to so refuse. The statute neither authorizes nor condemns the use of such comments. It does not purport to address any issue of admissibility. We believe the legislature's intent in promulgating A.R.S. § 13-4433(E) was merely to explain to the jury, in cases where the evidence of the refusal came in because it was relevant to some issue in the case, that the victim had a constitutional right to refuse a pretrial interview.

## IV. Relevancy

Because we decide today that constitutional issues are not implicated in applying A.R.S. § 13-4433(E), we need only review the trial court's weighing of the relevance of the victim's refusal of a pretrial interview. We review a trial court's decision to limit the parameters of a defendant's cross-examination under an abuse of discretion standard. *State v. Schrock,* 149 Ariz. 433, 438, 719 P.2d 1049, 1054 (1986); *State v. Zuck,* 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982) (holding that we will not disturb a trial court's decision to limit cross-examination absent a showing in the record of clear abuse of discretion).

A defendant's fundamental right to confront and cross-examine adverse witnesses is "limited to the presentation of matters admissible under ordinary evidentiary rules, including relevance." *State v. Dickens,* 187 Ariz. 1, 14, 926 P.2d 468, 481 (1996) (citing *State v. Oliver,* 158 Ariz. 22, 30, 760 P.2d 1071, 1079 (1988)); Ariz. R. Evid. 611(b). Even evidence that is relevant, however, may be excluded if it does not meet certain criteria. Rule 403 of the Arizona Rules of Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Ariz. R. Evid. 403. Furthermore, trial judges may reasonably limit cross-examination if concerned that the examination is only "marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

The court of appeals, in *Taggart,* found that a victim's refusal to grant a pretrial interview is always relevant, and thus, always admissible. 186 Ariz. at 571, 925 P.2d at 712. The court relied substantially on a line of Illinois Court of Appeals cases, which hold generally that "[a] refusal to talk in advance of trial to the other side reasonably could indicate hostility by the witness to the inquiring side, or at least a bias for, or an interest in, a favorable outcome for the side calling him." *Id.* (quoting *State v. Van Zile,* 48 Ill.App.3d 972, 6 Ill.Dec. 747, 751, 363 N.E.2d 429, 433 (1977)). For this reason, the *Taggart* court believed that "it must remain the jury's prerogative to decide whether [the victim's declination of a pretrial interview] reflects on the victim's credibility." *Id.*

We do not necessarily disagree with the Illinois cases, but they involve different considerations because they involved non-victim witnesses who had no constitutionally protected right to refuse pretrial interviews. *People v. McCollum,* 239 Ill.App.3d 593, 180 Ill.Dec. 346, 349, 607 N.E.2d 240, 243 (1992) (investigating deputy sheriff refused defense

---

4. When the statute is plain on its face, we need not inquire into its legislative history, or consider the statute's context, subject matter, effects and consequences, or its spirit and purpose. *See Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

pretrial interviews); *People v. Allison*, 236 Ill.App.3d 175, 177 Ill.Dec. 116, 120–21, 602 N.E.2d 1288, 1292–93 (1992) (state's eyewitness refused defense pretrial interview); *People v. Atteberry*, 213 Ill.App.3d 851, 157 Ill.Dec. 365, 366–67, 572 N.E.2d 434, 435–36 (1991) (state's eyewitness refused defense pretrial interview); *Van Zile*, 6 Ill.Dec. at 750–51, 363 N.E.2d at 432–33 (seven defense witnesses refused state's request for pretrial interviews). Because non-victim witnesses lack the constitutional right to refuse pretrial interviews, there is no occasion to apply a presumption that the refusal was based on the exercise of a constitutional right. We also note that the Illinois Supreme Court, in a case not cited in *Taggart*, held that a trial court did not abuse its discretion in precluding the defendant from cross-examining non-victim prosecution witnesses on their refusal to grant pretrial interviews. *People v. Peter*, 55 Ill.2d 443, 303 N.E.2d 398, 404 (1973); *see also People v. Wesley*, 250 Ill.App.3d 245, 190 Ill.Dec. 74, 86, 620 N.E.2d 1335, 1347 (1993); *People v. Williams*, 131 Ill.App.3d 597, 86 Ill.Dec. 703, 712, 475 N.E.2d 1082, 1091 (1985); *People v. Brown*, 87 Ill.App.3d 368, 42 Ill.Dec. 586, 590, 409 N.E.2d 81, 85 (1980). Thus, it appears that Illinois has no blanket rule even for either victim or non-victim witnesses but, instead, applies a relevancy standard on a case-by-case basis.

The Arizona case cited by *Taggart* holds that a witness' decision not to honor a subpoena to testify for the state but to testify for the defense could be considered evidence of bias. *State v. Hallman*, 137 Ariz. 31, 36, 668 P.2d 874, 879 (1983). We believe dishonoring a subpoena is substantially different than exercising a state constitutional right to refuse an interview. The former, because of its contemptuous nature, may well suggest animosity and bias, whereas the latter is simply exercising a constitutional right.

We also disagree with the court of appeals' intimation in *Riggs* that the victim's refusal of a pretrial interview is *never* relevant. We eschew any such bright line rule because there may well be cases in which the fact of refusal or the manner of refusal is relevant to bias or some other issue in the case. That, however, is not the case here.

Taggart argued that the trial testimony showed that the victims may have been biased. In support of this argument, Taggart posited the general theory that a "person who has allegedly been assaulted at knife point would be willing to come in and grant a thirty-minute interview because it would be significant enough of an event in their life to participate." Furthermore, Riggs argued that "[t]he victim's response might well have demonstrated a problem with his credibility." These assertions, without more, do not evidence bias to the victim and, thus, there was no abuse of discretion in these cases for not receiving evidence of refusal.

We recognize defense counsel's concerns in assuring that their requests for an interview are communicated to the victim. But these concerns can be addressed pretrial or during trial outside the presence of the jury.

## V. Separation of Powers Issue

Defendants contend that construing A.R.S. § 13–4433 to preclude them from cross-examining the victims on their refusal to grant pretrial interviews violates the separation of powers doctrine. *See* Ariz. Const. art. III; *Barsema v. Susong*, 156 Ariz. 309, 314, 751 P.2d 969, 974 (1988). Because we find that the statute does not bar such cross-examination, no separation of powers issue is presented.

## CONCLUSION AND DISPOSITION

A.R.S. § 13–4433 neither authorizes nor precludes the cross-examination of a victim on the victim's refusal to grant a pretrial interview. Admission of evidence of refusal is governed by the rules of relevancy. The state constitution confers no blanket right upon a victim to refuse to testify concerning the fact of refusal, and the federal constitution confers no blanket right upon defendants to inquire into the fact of refusal.

In the two cases before us, the trial courts did not abuse their discretion by excluding evidence that the victims refused an interview. Accordingly, we affirm the convictions

and vacate the opinions of the court of appeals in these two cases.

ZLAKET, C.J., JONES, V.C.J., and MARTONE, J., concur.

FELDMAN, Justice, dissenting.

I cannot join the court's opinion, though I certainly agree the right of cross-examination may be limited to relevant matters. As the court acknowledges, because a witness' bias and hostility affect credibility, it is always relevant to show these matters. Any ruling preventing a defendant from demonstrating bias through cross-examination "is constitutional error." MORRIS K. UDALL, ET AL., ARIZONA LAW OF EVIDENCE § 35 at 60–61 (3d ed. 1991).

The statute in question is the product of a joint rules-statutory implementation committee appointed by this court and the legislature. Given the history of the committee discussions and the constitutional right to explore the issue of bias, I believe the better interpretation is that A.R.S. § 13–4433(f) and Rule 39(b)(11) contemplate that comment would be permitted on the victim's refusal to grant an interview and, when such comment was made, "the court shall instruct" on the victim's constitutional right to refuse that interview. *Id.* I acknowledge, however, that the statute and the rule are ambiguously worded and can be read any one of three ways: to forbid comment but provide for an instruction if one is made; to permit comment and to require an instruction when that comment is made; or, as the court concludes today, to leave it to the trial judge to determine admissibility under the Rules of Evidence. Given the court's rule-making power under article VI, § 5(5) of the Arizona Constitution, it is reasonable to read the rule and the statute according to the third possibility.

I would choose, however, what I believe the committee had in mind—to permit comment or questions and to require an instruction when mention is made. But even if we take the court's view and allow the trial judge discretion to admit under the Rules of Evidence, I believe the court has erred. As the court itself acknowledges, there are "cases in which the fact of refusal or manner of refusal is relevant to bias or some other issue." Opinion at 1166. This being so, the court puts the cart before the horse in requiring an ultimate showing of relevance before the victim can be asked first whether he or she refused the interview and then about the reasons for such refusal. The court requires counsel to perform the impossible. How can the foundation of bias or hostility be shown without first establishing the fact of refusal and then exploring the reasons for that refusal in attempting to show it was prompted by something other than the exercise of a constitutional right? Of course, in some cases the victim may display untoward hostility, bias, or anger from the witness stand and so provide the necessary foundation. But in that event, the fact of interview refusal is probably unimportant icing on the cake. It is the fact of refusal and the reasons for the refusal that may permit counsel to show bias or hostility. I fear the court today sanctions an unduly restrictive limitation of the constitutional right to cross-examine on the issue of credibility. *See* 4 WEINSTEIN'S FEDERAL EVIDENCE § 611.03[4][a], at 611–30 (Joseph M. McLaughlin, ed., 2d ed. 1997).

Hopefully trial judges will give defense counsel wide latitude and will broadly interpret the court's foundational requirement that "victims refused the interviews for a reason or in a manner bearing on their credibility, ...." Opinion at 1163. Perhaps some offer of proof by way of cross-examination out of the presence of the jury will be necessary to allow counsel to establish that foundation, bearing in mind that the lawyer has not had the opportunity to speak to the witness before cross-examination. Counsel must be given some opportunity to approach the issue and explore it. *State v. Fleming*, 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977); *Smith v. Illinois*, 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968).

I respectfully dissent.