987 P.2d 218

**STATE of Arizona, ex rel., Richard M. ROMLEY, Maricopa County Attorney, Petitioner,**

v.

**The Honorable Sherry HUTT, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Robin Treen, Real Party in Interest.**

No. 1 CA–SA 99–0146.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 31, 1999.

As Corrected Sept. 23, 1999.

Richard M. Romley, Maricopa County Attorney by David J. Drexler, Deputy County Attorney, Phoenix, Attorneys for Petitioner.

Dean W. Trebesch, Maricopa County Public Defender by Allyson D. Ochs, Deputy Public Defender and Jeffrey T. Roth, Deputy Public Defender, Phoenix, Attorneys for Real Party in Interest Robin Treen.

## OPINION

THOMPSON, Judge.

¶ 1 This special action arises out of a request by Real Party in Interest Robin Treen (defendant) to interview victim James Hickey (Hickey). The trial court ordered the interview, and the state challenges the order as violative of the Victims' Bill of Rights. We have jurisdiction pursuant to Ariz.Rev.Stat. Ann. (A.R.S.) § 12–120.21(A)(4). For the following reasons, we accept jurisdiction and grant relief.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 James T. Hickey, a member of the State Bar of Arizona, served as attorney for Larry Treen[1] (Treen) until December 15, 1997 when Hickey terminated the attorney-client relationship. Apparently, Hickey had allowed Treen to use his car, a Camaro. In addition, Hickey had paid Treen in advance to repair his wife's car, a Celica. Treen cashed the checks Hickey paid him for the repairs but failed to do the work. Because Treen never did the repairs on the Celica and failed to complete other work he was to do for Hickey, Hickey terminated their various business dealings, including the attorney-client relationship. Hickey demanded that Treen return certain items of property, including the Camaro. On December 15, 1997, Hickey informed Treen in writing that he had until 5:00 p.m. that day to make arrangements to return the items or Phoenix police would be called in and Treen arrested.

¶ 3 Treen never returned the Camaro. Police detectives eventually located Treen and defendant, and the Camaro. Defendant allowed the detectives to search the car. The police investigation revealed that Treen had fraudulently obtained Arizona title and registration documents transferring ownership of the Camaro to himself. Treen and defendant were charged with theft of the Camaro, a class 4 felony.[2] The indictment also contained eleven other counts, none of which involved this victim.

¶ 4 Defendant asked to interview Hickey. Hickey declined. Defendant then filed a motion for a pretrial hearing to determine whether Hickey refused an interview based on bias, interest, or hostility. The trial court indicated that Hickey could be impeached at trial with his declination to be interviewed, and also ordered that Hickey submit to the interview he had already refused. The record of the hearing contains the following exchange:

> [THE COURT:] Bias and prejudice are defense[s] raised which cannot be fully explored by the defendant without the ability to go into these areas with the witness. Failure to allow the defendant to go into these areas in this case would cut to the heart of the defense and deny the defendant the constitutional guarantees of due process.
>
> Where the two rights are in conflict the defendant's right to due process must be paramount and therefore I'm inclined to grant the defense motion.
>
> [PROSECUTOR:] Your Honor, notwithstanding the Court's decision I would be asking for a stay. The State wishes to file a special action with the Court of Appeals on the Court's ruling.
>
> THE COURT: All right. And let's be real clear since if we're going to take this up as to what I'm ruling. We're talking about the ability of the defendant to ask the witness at trial whether they refused a pretrial interview.
>
> [PROSECUTOR:] I understand that, Your Honor, but the motion per se was for a pretrial interview.
>
> THE COURT: Correct. There's two parts.
>
> [PROSECUTOR:] Let me hold back on mine.

---

1. Larry Treen is defendant's husband. Both are co-defendants in the underlying case.

2. The record does not contain the charging document or police report.

THE COURT: I want to make sure if you're going to take a special action I want to make real sure that when we get something back from the Court of Appeals we know what to do with it. I think it's [i]ncumbent upon me to be very specific as to what I'm ruling[.]

The first part is the ability of the defendant to cross-examine the witness at trial with the refusal of the out of court pretrial interview as impeachment on bias and prejudice. The Court considers in this case the allegation—the defendant's asserted defense of bias, of breach of an agreement, or of permission all of these aspects go to the heart of the offense and are tantamount to the defense in this matter.

And not to allow the defense to impeach the victim on these areas at trial would effectively deny the defendant her defense. So as to the trial examination the motion of defense is granted over objection by the State.

Then we get to the second issue which is the pretrial interview. And the Court further finds with regard to the pretrial interview that the facts of this case are so entwined—so entwined the victim with the defendant in terms of the agreement and any breach of that agreement that becomes the essence of the offense that to not conduct a pretrial interview of the witness effectively denies the defendant the ability to prepare for trial and thus to effectively prepare a defense at trial.

The state then filed a petition for special action.

### DISCUSSION

■■■ ¶ 5 The acceptance of jurisdiction in a special action is discretionary. *See King v. Superior Court,* 138 Ariz. 147, 149, 673 P.2d 787, 789 (1983). We may accept special action jurisdiction when there is no other means of obtaining justice on the issue raised. *See id.* (citing *Nataros v. Superior Court of Maricopa County,* 113 Ariz. 498, 557 P.2d 1055 (1976)). In this case, the state could not wait until after trial to appeal Judge Hutt's ruling because the defense interview already would have taken place.

Therefore, we accept special action jurisdiction in this matter.

¶ 6 In 1990, the people of Arizona amended their constitution to include a Victims' Bill of Rights, which states:

(A) To preserve and protect victims' rights to justice and due process, a victim of crime has a right:

. . . .

(5) To refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant.

Ariz. Const. art. 2, § 2.1(A)(5). This provision is implemented in A.R.S. § 13–4433, which provides, in part:

**A.** Unless the victim consents, the victim shall not be compelled to submit to an interview on any matter, including a charged criminal offense witnessed by the victim that occurred on the same occasion as the offense against the victim, that is conducted by the defendant, the defendant's attorney or an agent of the defendant.

**B.** The defendant, the defendant's attorney or another person acting on behalf of the defendant shall only initiate contact with the victim through the prosecutor's office. The prosecutor's office shall promptly inform the victim of the defendant's request for an interview and shall advise the victim of his right to refuse the interview.

. . . .

**F.** If the defendant or the defendant's attorney comments at trial on the victim's refusal to be interviewed, the court shall instruct the jury that the victim has the right to refuse an interview under the Arizona constitution.

■■■ ¶ 7 Arizona's appellate courts have considered the victim's right to decline a defense interview "absolute." *See State v. Roscoe,* 185 Ariz. 68, 74, 912 P.2d 1297, 1303 (1996). However, in some cases some victims' rights may be required to give way to a defendant's federal constitutional rights. *See State ex rel. Romley v. Superior Court,* 172 Ariz. 232, 240–41, 836 P.2d 445, 453–54 (App. 1992) (disclosure of victim's medical records

ordered). Defendant argues that she should be allowed to inquire of Hickey as to the reasons for his refusal to be interviewed, asserting that "[a] witness's refusal to grant a[p]retrial interview is often relevant to the witness's credibility." But our supreme court has said that the refusal of a crime victim to grant an interview does not necessarily indicate bias. *See State v. Riggs,* 189 Ariz. 327, 334, 942 P.2d 1159, 1166 (1997). Defendant further claims that her federal Sixth Amendment right to confront witnesses outweighs the victim's state constitutional rights. However, confrontation rights under the Sixth Amendment do not normally afford criminal defendants a right to pretrial discovery. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 52–53, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (plurality decision).[3] The right to confront witnesses at trial "does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 53, 107 S.Ct. 989.[4] Defendant also invokes *State ex rel. Dean v. City Court of City of Tucson,* 173 Ariz. 515, 844 P.2d 1165 (App.1992), for the notion that there is no violation of victims' rights when a victim is compelled before trial to disclose information in a court hearing.[5] The *Dean* opinion, however, which

involved compulsory process at a probable cause hearing, does not support the trial court's order for a pretrial discovery interview. *See id.* at 516, 844 P.2d at 1166. Indeed, *Dean* specifically disallowed the use of a preliminary hearing as a discovery device. *See id.* at 517, 844 P.2d at 1167 (citing *State v. Bojorquez,* 111 Ariz. 549, 535 P.2d 6 (1975) for the proposition that "pretrial hearings are not to be used for purposes of discovery").[6]

¶ 8 Defendant in these proceedings has sought to explain why she should be allowed pretrial inquiry of the victim regarding bias, interest or hostility. We reject these arguments. But defendant has not even attempted to support the further reaches of the trial judge's ruling. The judge determined that:

> [T]he facts of this case are ... so entwined the victim with the defendant in terms of the agreement and any breach of that agreement that becomes the essence of the offense that to not conduct a pretrial interview of the witness effectively denies the defendant the ability to prepare for trial and thus to effectively prepare a defense at trial.

The trial court accordingly ordered a victim interview in which defendant would be al-

---

**3.** A majority of the court in *Ritchie* held there was no constitutional right, whether under a due process or confrontation clause analysis, to have confidential child protective service reports made available to defense counsel, unless and until the materiality and exculpatory nature of the information could be established through *in camera* inspection or otherwise. 480 U.S. at 55–61, 107 S.Ct. 989.

**4.** *Ritchie* does acknowledge, and enforce, a Fifth Amendment due process right to discover information which is both material and exculpatory. 480 U.S. at 57–61, 107 S.Ct. 989 (citing *inter alia Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). Defendant does not contend that the information she seeks is *Brady* material.

We do not agree with the assertion of the dissent that *Ritchie* involves a different due process analysis than that provided in *Brady.* The *Ritchie* majority clearly invokes *Brady* and its progeny in describing the principle that supported the discovery remedy ordered in that case, *in camera* inspection of confidential records:

> It is well settled that the government has the obligation to turn over evidence in its posses-

sion that is both favorable to the accused and material to guilt or punishment. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland, supra* at 87, 83 S.Ct. 1194.

*Ritchie,* 480 U.S. at 57, 107 S.Ct. 989.

**5.** Defendant's response in this special action for the most part constitutes an argument that the state should be denied relief because defendant is entitled to a pretrial hearing to explore Hickey's alleged bias. Defendant's motion before the trial court sought a hearing, not an interview. However, the trial judge ordered an interview, and that ruling is what the state has challenged here. We have considered defendant's arguments, to the extent possible, as they may be applicable to the question before us, that is, a victim interview.

**6.** Defendant also relies on *Riggs,* 189 Ariz. 327, 942 P.2d 1159, in urging that we deny relief. *Riggs* involved cross-examination at trial regarding a victim's pretrial refusal of an interview. *See id.* at 330, 942 P.2d at 1162. It did not purport to delineate when, if ever, a defendant could compel a pretrial defense interview of a victim. Nowhere in *Riggs* did the supreme court authorize victim interviews.

lowed to explore not just whether the refusal of an interview demonstrated bias, interest or hostility, but also allegations that Treen breached an agreement with Hickey, and that the Treens lacked permission to use his car. In short, the trial court ordered a victim interview to explore the state's case, and did not even purport to limit the interview to questions of bias, interest or hostility.[7]

¶ 9 The trial court's determination that key elements of the charge, and the defense to the charge, will likely involve information provided by Hickey does not justify breach of Hickey's constitutional right to decline to be interviewed. Certainly, Hickey is a key witness, and it would be useful to defendant to talk to him before trial, but our constitution precludes this, and no superior constitutional right of defendant's compels it. Indeed, the trial court's conclusions regarding the facts of this case would be broadly applicable in a great many criminal cases involving victims. Victims are often important, crucial, and even critical witnesses. It is no doubt a sound practice for lawyers to interview witnesses before trial. But to compel victim interviews based on the kind of generic considerations presented here would nullify a significant constitutional protection afforded crime victims. The victim's right to refuse a defense interview protects the victim's privacy and allows him to minimize contact with the defendant, if he so chooses. In order to uphold the determination of the people of this state that such protections be available to crime victims, we must reverse the trial court's order of a compelled victim interview in this case.

## CONCLUSION

¶ 10 For the foregoing reasons, we accept special action jurisdiction and grant relief. We vacate the trial court's order for a pretrial victim interview.

CONCURRING: E.G. NOYES, JR., Chief Judge.

LANKFORD, Judge, dissenting.

¶ 11 I must respectfully dissent. While I agree that the exercise of special action jurisdiction is appropriate because of the inadequacy of any other remedy, I disagree that relief is warranted.

¶ 12 The State brought this special action. Yet it effectively challenged only one half of the trial court's two key findings.[8] While the State contended a pretrial interview to establish bias was unjustified,[9] it failed to attack the trial court's finding that the interview was necessary for defendant to defend herself on the substance of the charge. The State's only argument that encompassed the pretrial interview to obtain the substance of the testimony was that the victim's right to refuse an interview is unfettered—a proposition all of us reject because of the supremacy of federal constitutional rights.

¶ 13 In my view, this is fatal to the State's petition. Special action relief is, after all, extraordinary. Indeed, the procedure is simply a substitute for the traditional "extraordi-

---

**7.** The dissent says the state is not entitled to relief because it has not attacked the substance of the "findings" the trial judge offered in support of her compulsion of a victim interview. As we have noted, conversely, defendant has never attempted to justify those findings, and never sought, even in these proceedings, what the trial judge ordered, an interview of the victim as to the merits of the case. Presumably, defendant has made a tactical decision to seek, not what the constitution expressly forbids, but some middle ground by way of a pretrial hearing to explore why the victim refused an interview. Under such circumstances, it would not seem unreasonable if the state had decided to address only defendant's arguments and rely on the express language of our constitution in opposing a victim interview which defendant never sought.

In any event, the state *has* attacked the trial judge's findings. The state urges that the fact that Treen and Hickey had business and professional relationships that defendant might want to explore is insufficient to override the victims' right to decline to be interviewed, and that the trial judge's findings in this regard, if allowed to stand, would permit the victims' right to decline to be interviewed to be ignored in every case where a victim and a defendant had some "relationship" that predated the charged offense. We agree with these contentions.

**8.** The State also has not challenged that part of the trial court's order allowing defendant to cross-examine the witness about his refusal of a pretrial interview.

**9.** The majority's characterization of the State's position relates to this argument. *See* n.7, *supra.*

nary writs." *See, 1 Arizona Appellate Handbook* § 7.1.2, at 7–2 (Hon. Sheldon H. Weisberg & Paul G. Ulrich eds., 3d ed.1998). It is available in this case only if the trial court made "a determination [that] was arbitrary and capricious or an abuse of discretion." Ariz. R.P. Spec. Actions 3(c).

¶ 14 The State, as the petitioner, bears the heavy burden of persuading us that the trial court made such an egregious error as to require our intervention.

> The special action petitioner's success will depend mainly upon whether the appellate court is persuaded, balancing all factors involved, that an exception should be made to the usual rule limiting appellate review to final judgments. This requires an understanding of the appellate courts' reluctance to interfere with ongoing superior court proceedings, as well as their limited ability to make decisions on significant issues without a fully-developed factual record. Since these factors undoubtedly influence appellate courts in their determination of special actions, they should also be of primary concern to the petitioner in making any initial decision to seek special action relief, and thereafter in the special action's preparation and presentation.

*1 Arizona Appellate Handbook*, § 7.2, at 7–3. The State has not contended that the trial court erroneously found that defendant needed the interview to be able to defend herself. The majority is satisfied that the State attacks defendant's position. *See* n.7, *supra.* That overlooks that the petition challenges the trial court's order, and that the petitioner's burden is to show that the order was so clearly wrong that extra-ordinary relief is required. As a result, I am unable to find in the State's papers a warrant for special action relief.

¶ 15 Yet the majority grants relief on the ground that the trial court had an insufficient basis for ordering the interview. It characterizes her ruling as relying on "generic considerations" that interviewing a victim witness is always helpful to a defendant. Not only is granting relief on that ground a mistake because it is not argued in the petition, but it is an unfair characterization of the trial court's decision.

¶ 16 It is unfair first because the trial judge made an order that set forth two specific bases for her order after hearing argument and reading pleadings regarding the particulars of this case. In other words, the judge did not enter a "generic" ruling. Her decision is not based on any notion that defendants are entitled routinely to interview victims. Instead, she made a determination that the majority concedes, at least in principle, she may make: The federal right to a fair trial may require in a particular case that a victim interview be permitted despite the state constitutional ban. That should be—and based on the lack of other special actions on the point, apparently is—a rare case. But such a ruling is not without legal authority.

¶ 17 Both we and the Arizona Supreme Court have previously said that federal due process and trial rights may supersede the state provision. "[I]f, in a given case, the victim's state constitutional rights conflict with a defendant's federal constitutional rights to due process and effective cross-examination, the victim's rights must yield. The Supremacy Clause requires that the Due Process Clause of the U.S. Constitution prevail over state constitutional provisions." *State v. Riggs*, 189 Ariz. 327, 330–31, 942 P.2d 1159, 1162–63 (1997) (citing U.S. Const. art. VI, cl. 2).[10]

---

10. To the extent that the majority suggests, *see supra*, n. 4, that the *Brady* standard defines the defendant's due process rights in this situation, the majority errs. While *Brady* may apply when the prosecutor controls exculpatory information, due process is implicated even when the prosecutor has no such control. For example, in a case cited by the majority, *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the information was withheld by a state agency pursuant to a statutory privilege and thus was equally unavailable to prosecution and defense.

*See also Coleman v. Saffle*, 912 F.2d 1217, 1230–31 (10th Cir.1990) (Tacha, J., concurring) (*Ritchie* "presents an entirely different question" than did *Brady*); *Roper*, 172 Ariz. at 239, 836 P.2d at 452 ("*Brady* emphasizes suppression of evidence by the prosecution, but does not require the victim to cooperate with the defense."). Indeed, my concurring opinion in *Roper* made clear that a *Brady* situation was not the only one in which due process could require that victim protection yield. *See*, 172 Ariz. at 241, 836 P.2d at 454.

¶ 18 In the case cited by *Riggs*, we held that "When there is a conflict, the due process clause of the U.S. Constitution prevails over a provision of a state constitution by virtue of the Supremacy Clause . . . ." *State ex rel. Romley v. Superior Court (Roper)*, 172 Ariz. 232, 236, 836 P.2d 445, 449 (App. 1992). "Due process of law," we wrote, "is the primary and indispensable foundation of individual freedom in our legal system." *Id.*

¶ 19 The majority's characterization is unfair, secondly, because we lack the trial court record. This is a special action, in which we receive only the documents provided to us by the parties. That record represents something considerably less than the totality of the case. And yet it is the context of the case that gives meaning to the judge's finding. That is, she determined that an interview was necessary in the circumstances of this case. She knew what those circumstances were. We may or may not know, depending on how much of the judge's knowledge of this case is conveyed by the limited record before us.

¶ 20 Finally, the majority's characterization of the order is unfair because it is inaccurate. Based on the portions of the record we have received, the ruling is not generic and does not wholly lack a logical or factual basis.

¶ 21 Let us consider what we do know of this case. The defendant, Robin Treen, is the wife of Larry Treen. He is charged in connection with the same incident as is Robin. Both are charged with theft of a Chevrolet Camaro automobile. The two are being prosecuted in separate actions. Due to his right against self-incrimination, Larry is not necessarily available as a witness for his wife.

¶ 22 Larry and not Robin Treen obtained the vehicle. James Hickey, then Larry Treen's lawyer, gave the vehicle to Larry. Hickey either provided it as a favor to Larry or to permit Larry to perform work on the vehicle as partial payment of legal fees. Robin's involvement appears to be that she was present when the vehicle was stopped by police, and consented to a police search.

¶ 23 If Larry is unavailable as a witness, then only Hickey will testify. Did James Hickey and Larry Treen agree that the car was on indefinite loan, or for a definite period? Did Hickey demand return of the vehicle and, if so, when? [11] Did Hickey's permission to use the vehicle include Robin? Did Hickey discuss Robin's use with Larry? These questions are potentially pivotal in this case. As the trial court found, "any breach of that [Hickey and Treen's] agreement . . . becomes the essence of the offense . . . ."

¶ 24 These questions cannot be answered except by asking Hickey. The trial judge determined that, to effectively defend herself, Robin Treen needed to know the answers before she asked the questions on cross-examination at trial. The judge also had evidence of a rocky relationship between James Hickey and Larry Treen that suggested possible bias in Hickey's testimony. Based on the record, the court's decision does not appear unreasonable, and the petitioner State has not even contended that it is. The majority appears to decide this question *de novo*, but I believe that the trial judge is entitled to some deference based on her direct familiarity with the case. As we recognized in a prior decision, balancing the state and federal rights "is a difficult task." *Roper*, 172 Ariz. at 236, 836 P.2d at 449. Given the unlimited variety of factual circumstances and trial judges' superior knowledge of their cases, I would not upset their decisions unless they are "arbitrary and capricious or an abuse of discretion." Ariz. R.P. Spec. Actions 3(c).

¶ 25 Accordingly, I dissent.

11. Our record includes a letter from Hickey to Larry Treen. The letter refers to a 1978 model Camaro and to a 1969 Camaro, but not a 1979 Camaro, the vehicle involved in this case. We do not know whether the letter is mistaken and intends to refer to the 1979 vehicle or is accurate and simply does not refer to it.