THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEXIS PACHECO, Defendant-Appellant.

Second District    Nos. 2—95—0989, 2—95—0990 cons.

Opinion filed June 7, 1996.

Ralph Strathmann, of Law Office of Ralph Strathmann, of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, Robert J. Biderman, and Leslie Hairston, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

In this consolidated appeal, defendant, Alexis Pacheco, appeals the judgment of conviction entered on each of two drug offenses. We affirm.

In appeal No. 2—95—0989 (trial court No. 94—CF—2468), defendant was found guilty by a jury on March 21, 1995, of the unlawful possession of a controlled substance (cocaine) (unlawful possession)

(720 ILCS 570/402(c) (West 1994)). The offense was alleged to have occurred on November 4, 1994.

In appeal No. 2—95—0990 (trial court No. 94—CF—2938), defendant was charged by indictment with the unlawful delivery of a controlled substance (cocaine) on a public way, within 1,000 feet of real property comprising a school, the latter circumstance enhancing the offense to a Class X felony (720 ILCS 570/401(c)(2), 407(b)(1) (West 1994)). The offense was alleged to have been committed on August 5, 1994. Defendant waived his right to a jury trial on June 26, 1995, and agreed to a stipulated bench trial in which he was found guilty of the unlawful delivery charge. On July 27, 1995, the circuit court sentenced defendant to concurrent terms of three years' imprisonment for the unlawful possession offense and nine years' imprisonment for the unlawful delivery offense. Following the denial of his motion to reconsider his sentence, this appeal followed.

On appeal in cause No. 2—95—0989, defendant argues that trial counsel was ineffective for failing to file a motion to quash his arrest and suppress evidence where, he claims, there was a strong probability of success on the motion, because the testimony at trial does not show that the officer had probable cause to arrest defendant. In cause No. 2—95—0990, defendant argues that the statutory scheme required the State to prove defendant's knowledge (*scienter*) of his proximity to a school as an element of the offense. Despite arguing the merits of his *scienter* argument, defendant further argues that trial counsel was ineffective for advising him to waive his right to a jury trial and proceed to a bench trial for the purpose of preserving the *scienter* issue because his counsel knew that the trial court would be bound by precedent and the likelihood of succeeding on appeal would be remote. Before addressing these issues, we recite only those facts necessary for an understanding of the issues to be resolved on appeal.

## No. 2—95—0989

At the jury trial, Officer David Martinson of the Waukegan police department testified that at about 4:20 p.m. on November 4, 1994, he was driving a marked squad car while on patrol on Belvidere Street and was headed toward West Street in downtown Waukegan. As he turned onto West Street, he noticed a group of Hispanic males standing in a driveway on West Street. When he was about 30 to 40 feet away from the group, he observed defendant throw a bag with a white substance in it. He saw defendant throw the object backwards, using a side motion with his right hand. He saw four people in the group. Martinson immediately stopped his patrol car, exited, and

walked up to defendant, facing him. Defendant was facing south. Defendant took a step or two away from the discarded object before Martinson said anything to him.

Martinson testified that one male near defendant began to walk away. Martinson did not attempt to stop him because he had no reason to do so. The other two males who were nearby, on the other side of the driveway, also walked away. Martinson informed defendant he was placing him under arrest and put him in the squad car. He did not inform defendant of the reason for the arrest at that time. Martinson went back within seconds to retrieve the item he saw defendant discard. Near some foliage, Martinson found a small plastic bag which contained a white substance. He took it, folded it up in a piece of paper, and stuck it into his pocket.

Officer Roger Bunnell, an evidence technician in the Waukegan police department, testified regarding the chain of evidence. He stated that he field tested the substance given to him by Martinson and that it tested positive for cocaine. The testimony of Mark Milford, a forensic scientist, established that the substance weighed 0.24 of a gram and contained cocaine.

Dionisio Rodriguez testified for the defense. He stated that there were 10 people gathered near the driveway where defendant was arrested. Rodriguez was standing behind and off to the side of defendant. When the officer parked his car, everyone started to move away. The officer told defendant to come toward him. When defendant did so, the officer handcuffed him and placed him in the police car. The officer then started searching the area for about 15 minutes. Rodriguez did not see defendant throw anything, nor did Rodriguez know if the officer found anything. Rodriguez testified that defendant did not try to run away when the police officer called him over.

Defendant testified that he did not see the officer turn the corner. Defendant was talking to some people in the driveway. He first observed the officer when he parked the car in front of the driveway—about 20 feet away. There were about 10 people present. The officer got out of the car, pointed to him, and called him over. The other people began moving away. Defendant went over to the officer, who then handcuffed him and put him in the car. The officer looked around the area for about 10 or 15 minutes but did not find anything. When the officer returned to the car, he showed defendant a bag and asked defendant if it was his. Defendant said no. He also testified that he did not throw away a plastic bag from his pocket. He denied that he moved when the police car came around the corner.

■ Defendant first argues, in rather conclusory fashion, that his trial counsel was ineffective for failing to file a motion to quash the

arrest and suppress the evidence. Defendant asserts that the trial evidence was insufficient to show the officer had probable cause to arrest him. However, even if we assume, without deciding, that the officer lacked probable cause to arrest him, defendant has nonetheless failed to show this court that there was a reasonable probability that the evidence would have been suppressed.

When a defendant claims he has received the ineffective assistance of counsel, he must show, under the two-prong *Strickland* test, that (1) counsel's performance was deficient, that is, his counsel's representation fell below an objective standard of reasonableness and deprived him of a trial whose result is reliable (*People v. Bynum*, 257 Ill. App. 3d 502, 507 (1994)); and that (2) the deficient performance substantially prejudiced his defense, that is, defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Eddmonds*, 143 Ill. 2d 501, 511-12 (1991). If an ineffective-assistance claim can be disposed of on the ground that defendant did not suffer sufficient prejudice, the court need not decide whether counsel's errors were serious enough to constitute less than reasonably effective assistance under the deficiency prong. *Eddmonds*, 143 Ill. 2d at 512.

A trial counsel's failure to file a motion to suppress does not establish incompetent representation when that motion would be futile; as it is a matter of trial strategy to file such a motion, counsel's decision will be accorded great deference. *People v. Wilson*, 164 Ill. 2d 436, 454-55 (1994). Such decisions by counsel are thus not ordinarily challengeable on review as ineffective-assistance claims. See *People v. Underwood*, 263 Ill. App. 3d 780, 788 (1994). To prevail on such a claim, defendant must show that the motion would have been granted and that the outcome of the trial would have been different had the evidence been suppressed. *People v. Myers*, 246 Ill. App. 3d 542, 545 (1993).

Here, defendant has not made such a showing. The officer was lawfully in what appears to be a public place when he saw defendant throw away a white substance in a bag before the arrest. The bag was discovered in open view and independently of the arrest; it was not obtained from defendant as a fruit of the arrest. The constitutional protection against unreasonable government searches and seizures extends only to individuals who have a reasonable expectation of privacy in the place searched or the property seized. *People v. Johnson*, 114 Ill. 2d 170, 191-92 (1986).

Defendant does not claim any possessory or ownership interest, nor any privacy expectation, in the abandoned bag of cocaine. Indeed, he testified at trial that the bag was not his. The fourth amendment

protection against unreasonable searches and seizures does not apply to abandoned property. See *United States v. Wilson*, 36 F.3d 205, 209 (1st Cir. 1994) (no reasonable expectation of privacy in packet dropped and left behind in public street); *United States v. Rem*, 984 F.2d 806, 810-11 (7th Cir. 1993) (privacy interest forfeited when luggage was abandoned). When the presence of the police is lawful and property is discarded in a public place where the defendant can have no reasonable expectation of privacy in the abandoned property, no issue of an unlawful search is presented, and probable cause is unnecessary to search or seize it. See *People v. Hoskins*, 101 Ill. 2d 209, 220 (1984); *St. Paul v. Vaughn*, 306 Minn. 337, 345-46, 237 N.W.2d 365, 370-71 (1975); see also *United States v. Colbert*, 474 F.2d 174, 176-77 (5th Cir. 1973); 1 W. LaFave, Search & Seizure § 2.6(b) (3d ed. 1996) (and authorities cited therein). Such is the case here. Thus, defendant's claim of ineffective assistance of counsel must fail to the extent that it is based on the probability that the evidence would have been suppressed.

We point out, moreover, that the alleged illegality of the arrest is of no legal consequence here since there was no evidence derived as tainted fruit of the arrest. The seizure of the bag was not incident to defendant's arrest. The purpose of the exclusionary rule is to enjoin the State from benefitting from evidence unlawfully obtained. *People v. Brumfield*, 100 Ill. App. 3d 382, 388 (1981). In the context of a criminal case, the only remedy for an illegal arrest is the exclusion of evidence resulting from that arrest. *People v. Pettis*, 184 Ill. App. 3d 743, 752 (1989); see *People v. Fox*, 155 Ill. App. 3d 256, 261 (1987) (a successful motion to quash arrest without the ensuing suppression of evidence is of little effect); *Brumfield*, 100 Ill. App. 3d at 387 (where no evidence is obtained from illegal arrest there is nothing to exclude). Even if defendant's arrest were deemed unlawful, this would not divest the trial court of jurisdiction to try defendant on the criminal charge, nor would it affect the validity of the judgment against him. See *People v. Finch*, 47 Ill. 2d 425, 436 (1970); *People v. Pardo*, 47 Ill. 2d 420, 423 (1970); *People v. Seybold*, 77 Ill. App. 3d 614, 616 (1979). Thus, defendant's contention that he was arrested without probable cause cannot be the basis for a claim of ineffective assistance of counsel for the failure to file a motion to quash arrest and suppress evidence.

No. 2—95—0990

Following the *voir dire* of the jury, defense counsel had a conference with the court outside the presence of the jury; he urged that the State was required to prove defendant's knowledge that he was

within 1,000 feet of a school as an element of the offense of unlawful delivery of a controlled substance within 1,000 feet of a school. Defendant's defense was that he was not aware of the presence of the school. The State's position was that proof of *scienter* regarding the presence of the school was not required as the proximity of the school was merely an enhancing factor which elevated the offense to a Class X felony. The State argued that the court should follow *People v. Brooks*, 271 Ill. App. 3d 570 (4th Dist. 1995) (in analogous case, State was not required to prove that defendant had knowledge that the offense of unlawful delivery of a controlled substance was committed within 1,000 feet of property owned by a public housing agency; the proximity of the property was merely an enhancing factor and not an element of the offense in the statute defining the offense). After considering *Brooks*, the trial court ruled that it would refuse any jury instruction submitted by defendant which had the proposed *scienter* requirement concerning the proximity of the school.

As a result of this conference, defendant, with the advice of counsel and after being admonished of his rights, waived a jury trial and agreed to a stipulated bench trial so as to preserve for review his contention that *scienter* must be proved as an element of the offense.

The stipulated facts show that Gab Guzman, an undercover officer of the Waukegan police department, would testify that on August 5, 1994, he went to south West Street and gave defendant $70 in exchange for 1.26 grams of cocaine. Officer Michael Taylor would testify that he was working with Guzman in the undercover operation on the date in question and saw defendant exchange a packet containing a white powdery substance for a sum of money. Taylor measured the distance of the transaction from the school and determined it to be 328 feet and 6 inches from Andrew Cooke Magnet School. He took possession of the substance and sent it to the Northern Illinois Police Crime Laboratory, where it was tested by Chris Hedges, who would state that the substance weighed 1.26 grams and tested positive for cocaine. Guzman and Taylor would identify defendant as the offender. The court thereupon found defendant guilty of the offense.

Section 401 of the Illinois Controlled Substances Act (Act) provides that "it is unlawful for any person knowingly to *** deliver *** a controlled or counterfeit substance or controlled substance analog." 720 ILCS 570/401 (West 1994). Section 401(c)(2) of the Act provides that any person who violates this section with regard to 1 gram or more but less than 15 grams of any substance containing cocaine is guilty of a Class 1 felony. 720 ILCS 570/401(c)(2) (West 1994). Section 407(b)(1) of the Act states in pertinent part that any

person who violates subsection 401(c) "on any public way within 1,000 feet of the real property comprising any school *** is guilty of a Class X felony." 720 ILCS 570/407(b)(1) (West 1994).

■ Defendant argues that a mental state, in this case, defendant's knowledge of the existence of the proximity of the school property, must be proved by the State as a necessary element of the offense. He relies in part on *People v. Hicks*, 119 Ill. 2d 29 (1987) (prior theft conviction, which elevates theft from misdemeanor to felony, is a necessary element of the offense of felony theft and must be proved during the evidentiary phase of the trial). Defendant also relies in part on sections 4—3(a) and 4—3(b) of the Criminal Code of 1961 (Code), which state:

> "(a) A person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to *each element described by the statute defining the offense,* he acts while having one of the mental states described in Sections 4—4 through 4—7.
>
> (b) If the statute defining an offense prescribed a particular mental state with respect to the offense as a whole, without distinguishing among the elements thereof, the prescribed mental state applies to each such element." (Emphasis added.) 720 ILCS 5/4—3(a), 4—3(b) (West 1994).

Sections 4—4 through 4—7 of the Code define the mental states of intent, knowledge, recklessness, and negligence. 720 ILCS 5/4—4 through 4—7 (West 1994).

Defendant states that *Hicks* required the State to prove all the elements of the enhancing offense (a prior theft conviction) as essential elements of the felony theft offense. However, he also asserts that *Hicks* and the above-cited provisions of the Code require the State to prove a mental state or *scienter* for the enhancing factors, which here would be knowledge of the existence of a school property within 1,000 feet of the occurrence. We do not believe this expansive reading of *Hicks* in combination with the above-cited Code provisions is warranted. This position was rejected in the analogous case of *People v. Brooks*, 271 Ill. App. 3d 570, a decision from the Appellate Court, Fourth District. Notwithstanding defendant's good-faith argument that *Hicks* and the Code provisions should be read to require the State to prove *scienter* for the enhancing factor, we are persuaded to follow the holding and the rationale articulated by the *Brooks* court.

In *Brooks*, the reviewing court concluded that the State was not required to prove the defendant knew of the existence of a public housing authority's residential property within the 1,000-foot area

where the substantive elements of the offense (unlawful delivery of a controlled substance) were committed. In that case, the presence of the residential property owned by the housing authority was likewise only an enhancing factor used to elevate the level of the felony to a Class 1 felony. The reviewing court determined that, in putting the enhancing factors on the same level as those of the underlying offense as far as requiring proof of the elements at trial, our supreme court in *Hicks* did not put those factors on the same level so as to require proof of a mental state.

The *Brooks* court noted most particularly that sections 4—3(a) and 4—3(b) of the Code provide that *scienter* was necessary only for each element described or defined by the statute defining the offense (720 ILCS 5/4—3(a), 4—3(b) (West 1994)). Since the statute *defining* the offense (see 720 ILCS 570/401(d) (West 1994)) referred only to the substantive elements of the offense, *i.e.*, knowing delivery of a controlled substance (cocaine), and did not refer to the enhancing factors, sections 4—3(a) and 4—3(b) were found to have no relevance to the elements of the enhancing statute. The court concluded that the defendant's knowing delivery of a controlled substance was the conduct that constituted the felony offense and that is what the State was required to prove with respect to the *scienter* requirement. The enhancing provision concerned only the consequences of the offense which make it a more serious felony, and the State did not have to prove that the defendant was aware of the proximity to public housing sites.

The *Brooks* court drew an analogy between the enhancing provision of the proximity of a public housing property and an enhancing provision where the victim's age is a factor. The court found that requiring proof that defendant knew his victim's age, just like requiring proof that defendant knew the distance from a public housing site, would contravene the legislative intent of creating enhancement provisions to protect victims who were more vulnerable because of their infirmities. The court observed that some other state courts have reached a similar result. See Annotation, *Validity, Construction, and Application of State Statutes Prohibiting Sale or Possession of Controlled Substances within Specified Distance of Schools*, 27 A.L.R.5th 593 (1995).

We hold that the State was required to prove the substantive elements of the offense (the unlawful delivery of a controlled substance) as well as the enhancing factors including the proximity of the school, but the State was not required to prove that defendant knew or was aware of the proximity or distance of the school from the area where the offense was committed. A natural consequence of our holding is

to place upon the seller of controlled substances the burden of ascertaining whether a school is located within the area of his transactions. We find no error in the trial court's ruling on this issue.

■ Defendant next argues that he was denied the effective assistance of counsel because his trial counsel advised him to waive his right to a jury trial and proceed by way of a stipulated bench trial. It is clear that defendant's knowing and voluntary waiver of a jury trial was intended to preserve for review what appears to have been his only viable defense. The stipulated facts would show that defendant was caught in the act of selling a controlled substance. Defense counsel made what appears to be a strategic, good-faith decision to test the existing interpretation of the law as expressed in *Brooks*, knowing that defendant probably could not be acquitted in a full-blown trial.

The determination of the reasonableness of trial counsel's actions must be evaluated from counsel's perspective at the time of the alleged error, without hindsight, in light of the totality of the circumstances. *In re D.M.*, 258 Ill. App. 3d 669, 674 (1994). A stipulated bench trial can be used to avoid the waiver rule while still allowing the parties to proceed with the benefits and convenience of a guilty plea procedure and preserve a defendant's only viable defense theory for review. See *People v. Horton*, 143 Ill. 2d 11, 22 (1991). This method may be a defendant's best or only avenue of defense, particularly where the evidence against him is overwhelming. See, *e.g.*, *Horton*, 143 Ill. 2d at 26-27.

In the present case, the *Brooks* construction of the statute had not been tested in this appellate district, and counsel made a good-faith effort to argue that existing precedent had been wrongly decided. We could not say confidently that the law was well settled in this area. In making its ruling concerning *scienter* as to the enhancing factor, the trial court relied on, and was bound to follow, an analogous case from another appellate district, in the absence of binding precedent from this appellate district. Although the *scienter* argument regarding the enhancing factor ultimately failed, the argument was not completely and utterly without merit.

In any event, defendant has not met his burden of showing that there was a reasonable probability that the outcome of a jury trial or a conventional bench trial would have been different had counsel not used this method, particularly where the State could present strong evidence of defendant's guilt. Our examination of the record persuades us that it is highly unlikely defendant would have been acquitted in a full trial. See, *e.g.*, *Horton*, 143 Ill. 2d at 27; *In re D.M.*, 258 Ill. App. 3d at 675. Defendant voluntarily agreed to the stipu-

lated bench trial and was carefully admonished of the consequences. As this case involved a strategic decision made in the face of strong evidence of defendant's guilt, we are not persuaded that defendant's trial counsel rendered ineffective assistance.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

COLWELL and RATHJE, JJ., concur.