NO. 4-97-0802

November 4, 1998

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee,          ) Circuit Court of

          v. ) Morgan County

DERICK E. ELLIOTT, ) No. 97CF63

          Defendant-Appellant. ) 

              ) Honorable

                    )    Tim P. Olson,

                               )    Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE GARMAN delivered the opinion of the court: 

Following a bench trial in the circuit court of Morgan County, defendant Derick Elliott was found guilty of two counts of armed robbery (720 ILCS 5/18-2(a) (West 1996)) and two counts of robbery (720 ILCS 5/18-1 (West 1996)).  He was sentenced on the armed robbery counts to concurrent terms of 13 years in prison.  He now appeals, arguing (1) pepper spray is not a dangerous weapon as a matter of law, (2) defense counsel provided ineffective assis­

tance of counsel by advising defendant to waive a jury trial, (3) the trial court erred in entering judgment on the robbery counts and one of the armed robbery counts, and (4) his sentence is excessive and is disproportionate to the sentences received by his codefendants.  We affirm in part and vacate in part.

Defendant was charged with participating in a robbery at the Chapin State Bank, while armed with a dangerous weapon.  The weapon was alleged to be a can of pepper spray, a gas-type chemical 

agent containing oleoresin capsicum.  Prior to trial, defendant filed a motion to dismiss the armed robbery counts, alleging that pepper spray is not a dangerous weapon as a matter of law.  A hearing was held on this motion on July 8, 1997.  The trial court concluded that this was a question of fact for the jury to determine and it denied defendant's motion.  

On July 14, 1997, defendant and his counsel appeared before the trial court and defendant waived his right to a jury trial.  The trial court extensively admonished defendant of the nature of the charges, the possible penalties, and of his right to a jury trial.  After telling the court that no one had pressured him into waiving his right to jury trial and that no threats or promises had been made to obtain the waiver, defendant signed a written jury trial waiver.  

At the bench trial, evidence indicated that, following the robbery at the bank, defendant and three other men were stopped in a car in which a bag containing over $8,000 in cash was found.  An additional $200 was found outside the bank.  Tellers at the bank later identified the money as coming from the bank, based upon the presence of "Post-it" notes in the tellers' handwriting on some of the bundles of money and upon the presence of "bait money,"  serial numbers of which had been previously recorded.  

Pam Nickel, a teller at the bank, testified that she recalled defendant coming into the bank to change a $1 bill the day before the robbery.  On April 29, 1997, at approximately 20 minutes before closing time, a man came up to another teller, Joyce Crews, pointed a hand at her face, and said, "[G]et on the floor."  Nickel was unable to see what the man had in his hand.  She and Crews got down on the floor and could hear someone come behind the counter.  Nickel heard a man say, "[D]on't worry about it, it's not your fucking money."  She heard an aerosol can being sprayed. She described the effects of the pepper spray on her and Crews as follows:  

"I'm on the floor and my eyes are closed so it's dark, and as I begin to get up off the floor, I couldn't breathe.  It was just like something was--to be honest with you, I thought at first I'd been shot in the back of the head and this is how it felt to die.  I could not breathe.  I just couldn't breathe.  And as I got up, I just started gagging and gagging and trying to breathe.  And then I heard Joyce, and she was screaming about her eyes, and we were trying to take care of our pain while we were trying to get help.

***

I just simply started gagging like I was going to throw up, and we got, hit the silent alarm.  Joyce is screaming about her eyes, and she called the main bank and she's still screaming about her eyes, so I had to take over on the phone, and I'm having a very difficult time trying to talk and breathe because my nose is beginning to burn.  It's like, it felt like I had been burned through the inside out.

*** 

Everything just happened so fast.  I remember Bill [Privia] and Chris [Privia] coming over and helping us.  I had gone and locked the doors prior to that because we were scared that they would come back, so we locked the doors.

* * *

We let [the Privias] in and they were trying to get Joyce's eyes, so I went ahead and called the police office, and, to make sure they knew the bank had been robbed, and we were trying to get her eyes, he said flush them with water, so we're trying to flush her eyes with water, and there was nothing I could do for myself.  I'm just burning.  I could not get any relief, and I couldn't hardly talk to continue, so I didn't tell them what happened because I was having a hard time breathing. 

* * *

*** [O]nce outside, I started, like I was going to throw up.  In fact, I did a little bit because it was so bad.

***

I had been down with my face down on the floor, and when they had sprayed down on us, it got all over my hair and the back of me.  And I had a sweater and a vest on that day, and I just remember the whole of my back just burning.  And when I took it off and I put on my jacket, it was just red like I'd been set on fire.  It was just, it was very intense."

Nickel testified that she has recovered from the effects of the spray, but she has a cough she did not have before.  One of the paramed­ics told her that if she got the spray in her lungs, she could have trouble in the future.    

Crews testified that after she arose from the floor, her eyes were burning "out of [her] head" and she was choking from the spray.  The paramedics flushed her eyes with water.  Later that evening, as she was showering, there was so much spray on the back of her head that when she washed her hair, her hands felt like they were on fire.  She is not suffering any ill effects from the spray at this time.  They were gone by the next day or the day after.  

Lieutenant Randy Duvendack of the Morgan County sheriff's department testified that defendant made a statement to him after waiving his 
Miranda
 rights.  Defendant stated that the robbery was planned approximately two weeks in advance.  It started out as a joke, but the talk became serious later.  Defendant and two friends, Shawn Stone and Michael Baker, drove to the bank.  Another man, Dusty Nelson, stayed with a second car out in the country.  The plan was to exchange vehicles there after the robbery.  The men disguised themselves.  Defendant wore a pillow case over his head with holes cut for the eyes.  While Baker acted as the lookout, defendant and Stone entered the bank, where defendant's job was to get the tellers to lay on the floor.  Defendant sprayed pepper spray on the tellers, while Stone got the money.  The two then left the bank.  Defendant threw the pepper spray can into the woods.  He cooperated with the officers and later found the spray can for them.  It seemed to Duvendack that Stone was the leader of the group.  

Defendant's motion for directed verdict as to the armed robbery counts was denied.  Paramedic Donald Emerick testified for defendant that the effects of pepper spray are severe burning and tearing of the eyes and irritation of the respiratory tract.  These effects usually wear off within one to two hours after exposure.  

At the conclusion of the evidence, the trial court found defendant guilty on all counts and entered judgment thereon.  It concluded that the pepper spray used in the course of the robbery was a weapon.  The spray can be used as an offensive instrument, as it was in this case, to contend against another person.  The court relied on dictionary definitions to determine that the pepper spray was also dangerous, as it exposed the victims to injury, pain, and harm.  The injury does not have to be permanent; it is enough that the spray inflicts a temporary disabling injury.  

Defendant filed a posttrial motion, which was denied.  Defendant's presentence report indicated that he had no criminal or traffic offense history.  Fred Elliott, defendant's father, testified that defendant once saved a man's life by giving him cardiopulmonary resuscitation.  In allocution, defendant apologized to Crews and Nickel and to his family and stated he was sorry for what he had done.  At the conclusion of the hearing, the trial court sentenced defendant to 13 years' imprisonment on the armed robbery counts.  No sentence was imposed on the robbery counts.  The trial court denied defendant's request to vacate the robbery convictions.  Defense counsel and the trial court discussed the need for a motion to reconsider sentence.  The court indicated it did not think one was necessary in order to preserve defendant's right to appeal sentencing issues.  This appeal followed.

I

Defendant first argues on appeal that pepper spray is not, as a matter of law, a dangerous weapon under the armed robbery statute.   Thus, the armed robbery counts of the information did not sufficiently charge that offense.  The elements of robbery and armed robbery are as follows.

Section 18-1(a) of the Criminal Code of 1961 (Code), the robbery sta­tute, states:  "A per­son com­mits rob­bery when he or she takes property, except a motor vehicle covered by Section 18-3 or 18-4, from the person or presence of another by the use of force or by threatening the imminent use of force."  720 ILCS 5/18-1(a) (West 1996).  Section 18-2(a) of the Code, the armed robbery sta­

tute, states:  "A person commits armed robbery when he or she violates Section 18-1 while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon."  720 ILCS 5/18-2(a) (West 1996).

The purpose of the armed robbery statute is to treat more severely a person who commits a robbery while possessing a weapon actually capable of causing serious injury than a person who commits a robbery without possessing such a weapon.  
People v. Lindsay
, 263 Ill. App. 3d 523, 527-28, 635 N.E.2d 551, 555 (1994).  The armed robbery statute does not define the term "dangerous weapon."  In determining what constitutes a dangerous weapon under the statute, courts have divided objects into four categories.  
People v. Burge
, 254 Ill. App. 3d 85, 90, 626 N.E.2d 343, 346 (1993).  The first category contains objects that are dangerous 
per
 
se
, such as knives and loaded guns.  
People v. Neither
, 166 Ill. App. 3d 896, 900, 520 N.E.2d 1247, 1249 (1988).  The second category contains objects that are never dangerous weapons.  
People v. Skelton
, 83 Ill. 2d 58, 66-67, 414 N.E.2d 455, 458 (1980) (four-inch plastic toy gun as a matter of law not consid­ered dangerous weapon).   The third category contains objects that are not necessarily dangerous weapons but can be used as such.  
People v. Flores
, 245 Ill. App. 3d 149, 158, 613 N.E.2d 1372, 1379 (1993) (unloaded guns or toy guns made of heavy material fall into this category since they are incapable of shooting bullets but can be used as bludgeons); 
People v. Robinson
, 73 Ill. 2d 192, 201-02, 383 N.E.2d 164, 169-70 (1978) (fingernail clippers with a sharpened file).  Whether an object in the third category is a dangerous weapon is a question of fact to be resolved by the trier of fact.  
Flores
, 245 Ill. App. 3d at 158, 613 N.E.2d at 1379.  The fourth category contains objects that could normally fall into the third category, but which were actually used in a dangerous manner in the course of the robbery.  See, 
e.g.
, 
People v. De La Fuente
, 92 Ill. App. 3d 525, 535-36, 414 N.E.2d 1355, 1363-64 (1981) (defendants bludgeoned victim with unloaded gun).   

In 
People v. Brown
, 87 Ill. App. 3d 368, 409 N.E.2d 81 (1980), defendant was convicted of armed robbery.  During the course of the robbery, defendant sprayed an unidentified substance in the victim's face, temporarily blinding him.  On appeal, defendant argued that the substance could not be considered a dangerous weapon as a matter of law because the substance was never identi­fied and its effects wore off within two hours.  The appellate court held that the question of the nature and character of the weapon used was properly left to the jury to determine, stating: 

"'Where the weapon in question and the manner of its use are of such character as to admit of but one conclusion, the question whether or not it is deadly is one of law for the court to determine, but when the character of the weapon is doubtful or the question depends upon the manner of its use it is a question for the jury to determine from a description of the weapon, from the manner of its use and the circumstances of the case.'"  
Brown
, 87 Ill. App. 3d at 371, 409 N.E.2d at 84, quot­ing 
People v. Dwyer
, 324 Ill. 363, 365, 155 N.E. 316, 317 (1927).

Defendant here points out that he did not spray the pepper spray directly in the victims' faces.  He argues he used the spray in a defensive manner while the victims were lying on the floor.  Since the victims were lying on the floor at defendant's order, they were not in any position to attack him.  It is obvious that defendant used the pepper spray to disable the victims while defendant and his cohorts made their getaway.  His argument that he was using the spray in a defensive manner is without merit.  In any event, it is irrelevant what defendant's intent was when he used the spray.  The statute requires only that he be armed with a dangerous weapon, not that it actually be used.  

Pepper spray falls within the fourth category of objects that are actually used in a dangerous manner.  Therefore, the question of whether the pepper spray consti­tut­ed a dangerous weapon in defendant's case was properly one for the trier of fact to deter­mine.  In addition, we do not find any error in the trial court's factual determination that pepper spray is a dangerous weapon.  Although there was testimony that the effects of pepper spray are normally temporary, there is no question that its effects are disabling.  Both victims testified that after the spray was used, they had difficulty breathing and their eyes burned.  One of the victims stated that the spray made her feel nauseated.  They were both temporarily incapaci­tated by the effects of the spray.  These effects did not wear off completely until several hours after the robbery.  The victims suffered injury and the fact that the injuries were not permanent does not change our conclu­sion.  

A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfac­tory that it creates a reasonable doubt of the defendant's guilt. 
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985).  When pre­sented with a chal­lenge to the sufficiency of the evi­dence, a reviewing court will sustain a criminal conviction if "'after viewing the evidence in the light most favorable to the prosecu­tion, 
any
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  (Emphasis in original.)  
Collins
, 106 Ill. 2d at 261, 478 N.E.2d at 277, quot­ing 
Jackson v. Virginia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).  
Based upon the evidence presented, we conclude that defendant was proved guilty of armed robbery beyond a reasonable doubt.  

II

Defendant next argues that he received ineffective assistance of counsel from his trial attorney because that attorney advised him to waive his right to a trial by jury, thus leaving him with no hope of an acquittal.  A convicted defendant's claim of ineffective assistance of counsel has two components.  First, defendant must show that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the sixth amendment.  Second, defendant must show that counsel's deficient performance prejudiced the defense.  This requires a showing that counsel's errors were so serious as to deprive defendant of a fair trial.  
Strickland v. Washington
, 466 U.S. 668, 687, 80 L. Ed. 2d  674, 693, 104 S. Ct. 2052, 2064 (1984).  Defendant must show that there is a reasonable probability that but for counsel's unprofes­

sional errors, the result of the proceeding would have been different.  A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  Errors in judgment or trial strategy do not establish incompetence.  
People v. Albanese
, 125 Ill. 2d 100, 108, 531 N.E.2d 17, 20 (1988).  There is a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance and a reviewing court must give substantial deference to counsel's conduct.  
People v. Whitamore
, 241 Ill. App. 3d 519, 525, 608 N.E.2d 1304, 1309 (1993).

Defendant argues that the trial judge indicated at the hearing on defendant's motion to dismiss the armed robbery charges that he believed pepper spray is a dangerous weapon for armed robbery purposes.  Thus, according to defendant, since he was clearly guilty of robbery, counsel's advice to waive a jury trial deprived defendant of the only defense he had to the armed robbery charges.  However, nowhere in the record is there any indication that defense counsel gave defendant any such advice.  The record is silent on the reason for defendant's jury trial waiver.  

Should we assume that defense counsel advised defendant to waive a jury trial, defendant's argument fails under both prongs of the 
Strickland
 test.  First, we note that advice on waiving a jury trial constitutes the type of trial strategy and tactics that cannot support a claim of ineffectiveness.  
Cf
. 
People v. Powell
, 281 Ill. App. 3d 68, 74, 666 N.E.2d 365, 369 (1996) (attorney's recommendation to defendant to have a jury trial in a criminal case, rather than a bench trial, constitutes a matter of strategy or tactics and cannot support a claim of ineffective assistance of counsel);  see 
People v. Pacheco
, 281 Ill. App. 3d 179, 188-89, 666 N.E.2d 370, 377 (1996) (counsel's advice to waive jury trial and proceed with stipulated bench trial was a strategic decision made in the face of strong evidence of defendant's guilt and did not constitute ineffective assistance).  

Defendant cites this court's decision in 
People v. Cunningham
, 286 Ill. App. 3d 346, 676 N.E.2d 998 (1997), in which the trial court denied defendant's motion to suppress.  Defense counsel advised defendant to enter a guilty plea in the apparent belief that he would still be able to appeal the trial court's denial of the motion to suppress.  Defendant sought to withdraw his plea, stating as his only grounds that he wished to appeal the trial court's suppression ruling.  The trial court denied the motion to withdraw.  On appeal, defendant argued that his counsel was ineffective because pleading guilty deprived him of the opportunity to appeal the trial court's denial of his motion to suppress.  This court found counsel's advice constituted ineffec­

tive assistance and was tantamount to failing to perfect an appeal.  
Cunningham
, 286 Ill. App. 3d at 352, 676 N.E.2d at 1003.  The instant case is readily distinguishable from 
Cunningham
.  Here, defendant was not deprived by counsel's advice of the opportunity to seek review of the trial court's finding that pepper spray is a dangerous weapon.  Counsel's advice was not premised upon a misunderstanding of the law, as was the case in 
Cunningham
.  

In 
Pacheco
, the defendant was charged with unlawful delivery of a controlled substance within 1,000 feet of school property.  After 
voir
 
dire
 of the jury, the trial court indicated that it would refuse any instruction stating that the State had to prove defendant's knowledge that he was within 1,000 feet of a school when he committed the offense.  On advice of counsel, defendant waived a jury trial and proceeded to a stipulat­ed bench trial to preserve the 
scienter
 issue for appeal.  One of defendant's arguments on appeal was that his counsel's advice to waive a jury trial amounted to ineffective assistance of counsel.  The appellate court disagreed, noting that counsel made a good- faith decision to test the existing interpreta­tion of the law as it related to the question of 
scienter
.  Evidence of the defendant's guilt was overwhelming, as he was caught in the act of selling a controlled substance.  The stipulat­ed bench trial preserved the issue for review.  The appellate court also noted that defendant had not shown that he was prejudiced by his jury trial waiver, since it was highly unlikely defendant would have been acquitted in a jury trial or a full bench trial.  
Pacheco
, 281 Ill. App. 3d at 188, 666 N.E.2d at 377.  

A similar situation exists here.  Defendant was clearly guilty of the robbery offense.  In waiving a jury trial, defendant did not give up his right of appellate review of the dangerous weapon issue.  Defendant argues, however, that the trial judge indicated at the hearing on the motion to dismiss the armed robbery charges that he believed the pepper spray was a dangerous weapon.  However, defendant misinterprets the judge's remarks.  The judge did not state or imply that he would find in defendant's case that the pepper spray was a dangerous weapon.  In explaining his reasoning, the judge expressed doubts that the Fourth District Appellate Court would find that items such as stun guns and mace would not constitute dangerous weapons as a matter of law.  In doing so, the judge alluded to the disabling effects of those weapons.  However, the judge specifically stated that whether the pepper spray was a dangerous weapon in defendant's case was a question of fact for the jury.  All the judge did was to determine that pepper spray does not fall within the category of weapons that cannot, as a matter of law, constitute a dangerous weapon.  Thus, contrary to defendant's argument, the issue was not predetermined and he was not deprived of the opportunity to present his defense because he opted for a bench trial.  

We also conclude that defendant has not shown any prejudice from his jury trial waiver.  Thus, he has not established the second prong of 
Strickland
.  Defendant has not shown that a jury would have made any different finding than did the trial court as to the issue of the pepper spray.  He has therefore failed to show that the outcome of the case probably would have been dif­

ferent, absent counsel's alleged unprofessional error.  

III

Defendant's next argument is that (1) both robbery convictions must be vacated because robbery is an included offense of armed robbery and that, with the exception of the presence of the pepper spray, the same physical acts constitute both robbery and armed robbery and (2) one of his armed robbery convictions must be vacated as they are based on the same physical act.  

The State asserts defendant has waived his arguments as to these alleged errors because he did not file a postsentencing motion.  After sentence was imposed, defense counsel asked the trial court to vacate the robbery convictions, since they were included offenses of the armed robbery offenses.  The trial court indicated the findings of guilt on the robbery charges would stand, although there would be no sentence imposed on those convictions.  The State bases its argument of waiver on 
People v. Reed
, 177 Ill. 2d 389, 686 N.E.2d 584 (1997).  In that case, the Supreme Court of Illinois held that section 5-8-1(c) of the Unified Code of Corrections (730 ILCS 5/5-8-1(c) (West 1996)), as amended by Public Act 88-311, eff. August 11, 1993 (Pub. Act 88-311, §15, eff. August 11, 1993 (1993 Ill. Laws 2604, 2615)), requires that sentencing issues be raised before the trial court to preserve them for appellate review.  The court relied on the plain language of the amended statute in holding that the legislature clearly intended to make a postsentencing motion the functional equivalent of a posttrial motion for purposes of appellate review.  
Reed
, 177 Ill. 2d at 394, 686 N.E.2d at 586.  

Defendant was sentenced on September 4, 1997, and his notice of appeal was filed on that date.  
Reed
 was issued on September 25, 1997.  However, this court has held that 
Reed
 applies to all cases pending in the appellate court at the time the decision was issued.  
People v. Corrie
, 294 Ill. App. 3d 496, 507-08, 690 N.E.2d 128, 135-36 (1998).  The supreme court did not indicate in 
Reed
 that its decision was to be given prospec­tive effect only.  That court relied on the plain language of the statute in determin­ing that postsentencing motions are required; therefore, the decision did not constitute a change in the law that would preclude retroactive effect.  
Corrie
, 294 Ill. App. 3d at 507, 690 N.E.2d at 135.  

We conclude that defendant has forfeited (
Corrie
, 294 Ill. App. 3d at 506, 690 N.E.2d at 134-35) appellate review of all sentencing issues.  However, we will address the question of the validity of the robbery convictions under the doctrine of plain error, despite defendant's failure to preserve his claim for our review.  Plain error exists only when the substantial rights of the defendant are affected or the evidence is closely balanced.  
People v. Griffiths
, 112 Ill. App. 3d 322, 326, 445 N.E.2d 521, 526 (1983).   We note that a defendant suffers prejudice when multiple offenses are carved out of the same physical act.  See 
People v. King
, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844 (1977).  

On the merits of this issue, the State argues that because the order of judgment and sentence does not reflect any conviction on the two robbery charges, defendant was not convicted of those charges.  We reject this argument.  In 
People v. Lilly
, 56 Ill. 2d 493, 495-96, 309 N.E.2d 1, 2-3 (1974), defendant was convicted of rape and indecent liberties.  He was sentenced only on the rape conviction.  The appellate court affirmed both convic­

tions.  On further appeal to the Supreme Court of Illinois, defendant argued that the trial court erred in entering judgment on the verdict of guilty on the indecent liberties charge.  The court noted there was no dispute that both charges arose out of a single act and, thus, there could be only one conviction of crime.  There was technically no final judgment on the indecent liberties conviction because no sentence was imposed.  However, the supreme court held that it had authority under Supreme Court Rule 366 (50 Ill. 2d R. 366) to vacate the incom­plete judgment on the indecent liberties conviction, since the case was properly before the court on defendant's appeal of his rape conviction.  

In 
People v. Medrano
, 282 Ill. App. 3d 887, 669 N.E.2d 114 (1996), the defendant was convicted of three counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a) (West 1992)), based upon (1) dangerous weapon, (2) bodily harm, and (3) threatening or endangering life.  The trial court entered judgment on all three counts but sentenced defendant on only one count.  The question on appeal was whether there was a final judgment on the unsentenced convictions.  The appellate court noted that a judgment is not final for appeal purposes until sentence is imposed.  However, a judgment of conviction is rendered once the trial court adjudicates a defendant guilty.  This occurred when the trial court entered judgment on the guilty verdicts.  Thus, defendant was convicted of all three offenses.  The appellate court vacated the convictions on the unsentenced offenses.  
Medrano
, 282 Ill. App. 3d at 891-92, 669 N.E.2d at 117.  

Robbery is an included offense of armed robbery.  See 
Neither
, 166 Ill. App. 3d at 903, 520 N.E.2d at 1251.  Even though defendant was not sentenced on the robbery convictions, he still stands convicted of two counts of robbery.  Since defendant has been sentenced on the greater offense, the robbery convictions must be vacated.

Defendant also argues that one of his armed robbery convic­tions should be vacated, since both counts rely on the same physical acts.  The State responds that both convictions were proper because there were two victims.  We disagree.  Both counts of armed robbery named Nickel and Crews.  The acts alleged in each count were identical, with the exception that one count alleged use of force and the other count alleged threat of imminent use of force.  Thus, the armed robbery charges were alternately worded counts of the same offense.  In 
People v. Yarbrough
, 156 Ill. App. 3d 643, 509 N.E.2d 747 (1987), defendant was charged with two counts of robbery arising out of a home invasion where there were two victims.  On appeal from his convictions, defendant argued that one of the robbery convictions should be vacated.  This court agreed, noting that both counts were identically worded, except that one count alleged a taking by the use of force and the other count alleged a taking by threatening the imminent use of force.  Thus, both counts arose out of the same physical act.  
Yarbrough
, 156 Ill. App. 3d at 647, 509 N.E.2d at 750.

Here, since both counts of armed robbery arise out of the same physical act, one count must be vacated.  
King
, 66 Ill. 2d at 566, 363 N.E.2d at 845.

IV

Defendant's final argument is that his 13-year prison sentence is excessive.  He points to certain mitigating factors weighing in favor of a lighter sentence.  He also argues that his sentence was disproportionate to those imposed upon his codefendants, both of whom had criminal histories.  One codefendant received a 15-year prison sentence and the other received a 10-year sentence.  The State argues that 
Reed
 precludes defendant from raising these issues on appeal because he failed to file a postsentencing motion.  As previously discussed, we agree with the State's contention and find that defendant has forfeited the right to raise his claims of error on appeal.  

CONCLUSION

Defendant's conviction of armed robbery on count I of the amended information and the sentence imposed thereon are af­firmed.  The conviction of armed robbery on count III and the sentence imposed thereon are vacated.  The robbery convictions on counts II and IV are vacated.  Cause remanded for entry of amended order of judgment and sentence.

Affirmed in part, vacated in part, and remanded with directions.

GREEN and STEIGMANN, JJ., concur.