IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DAVID MORALES, surviving husband of Cathy Morales, on his own
behalf and on behalf of statutory beneficiaries including GAVIN
CARPENTER, the surviving natural son of Cathy Morales,
*Petitioner*,

*v.*

THE HONORABLE RODRICK COFFEY, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge,*

STATE OF ARIZONA,
*Real Party in Interest*,

No. 1 CA-SA 23-0040
FILED 8-10-2023

Petition for Special Action from the Superior Court in Maricopa County
No.  CV2019-094321
The Honorable Rodrick J. Coffey, Judge

**REVIEW ACCEPTED; RELIEF DENIED**

COUNSEL

Ahwatukee Legal Office PC, Phoenix
By David L. Abney
*Co-Counsel for Petitioner*

The Leader Law Firm PC, Tucson
By John P. Leader
*Co-Counsel for Petitioner*

Wieneke Law Group PLC, Tempe
By Kathleen L. Wieneke, Tara Zoellner
*Counsel for Real Party in Interest*

---

## OPINION

Presiding Judge Jennifer M. Perkins delivered the opinion of the Court, in which Judge Angela K. Paton and Judge D. Steven Williams joined.

---

**P E R K I N S**, Judge:

¶1 In July 2018, Cathy Morales lost control of her car while driving west on Interstate 10 in Pima County. She crossed over the median strip, collided with an oncoming semi-truck, and died. David Morales, her husband, and Gavin Carpenter, her son, (collectively, "Morales"), acting as Cathy's statutory beneficiaries, sued the State for wrongful death, alleging it negligently designed the highway and failed to maintain adequate median separation and median-barrier protection. In this special action, Morales appeals the superior court's order bifurcating the trial into Phase I, addressing the State's affirmative defense, and Phase II, addressing liability and damages. The court ordered bifurcation under Section 12-820.03(B). Morales argues Section 12-820.03(B) is unconstitutional and infringes on our supreme court's authority to create rules of procedure.

¶2 We previously issued an order accepting jurisdiction but denying relief, thereby affirming the superior court's bifurcation order. This opinion explains that ruling.

## FACTS AND PROCEDURAL BACKGROUND

¶3 By statute, if certain conditions are met, a public entity or employee may assert an affirmative defense that, if successful, precludes liability "for an injury arising out of a plan or design for construction or maintenance of or improvement to transportation facilities[.]" A.R.S. § 12-820.03(A) ("affirmative defense provision"). If there is a genuine issue of material fact as to whether the public entity or employee met the requirements for this affirmative defense, subsection B requires the superior court to resolve that dispute "by a trial before and separate and

2

apart from a trial on damages." A.R.S. § 12-820.03(B) ("bifurcation provision").

¶4 Here, the State argued that it was entitled to summary judgment on Morales' claims. But if the superior court disagreed, the State argued, then the court must bifurcate the trial to determine first whether the State may rely on the affirmative defense provision before conducting the trial on damages. *See* A.R.S. § 12-820.03(B). Morales asked the superior court to find the bifurcation provision unconstitutional.

¶5 The superior court determined that it lacked discretion over whether to bifurcate the trial, but that it had discretion over how to accomplish bifurcation. It ordered the first phase on whether the State met the affirmative defense requirements to begin, with the second phase on Morales' claims to follow, if needed. Morales petitioned this Court for special action relief.

## JURISDICTION

¶6 Accepting special action jurisdiction is discretionary, *State v. Hutt*, 195 Ariz. 256, 259, ¶ 5 (App. 1999), but appropriate when a party lacks "an equally plain, speedy, and adequate remedy by appeal," Ariz. R.P. Spec. Act. 1(a). This special action presents a pure legal question and an issue of first impression, two factors that make exercising special action jurisdiction appropriate. *Callan v. Bernini*, 213 Ariz. 257, 258, ¶¶ 2, 4 (App. 2006). And Morales' petition questions the constitutionality of the bifurcation provision, an issue particularly appropriate for special action review. *Arizonans for Second Chances, Rehab., & Pub. Safety v. Hobbs*, 249 Ariz. 396, 404, ¶ 20 (2020).

## DISCUSSION

¶7 "We review the constitutionality of a statute de novo, construing it, if possible, to uphold its constitutionality." *Stanwitz v. Reagan*, 245 Ariz. 344, 348, ¶ 13 (2018) (quotation omitted). "The presumption of constitutionality may require us to interpret a statute to give it a constitutional construction if possible, but we will not rewrite a statute to save it." *State v. Arevalo*, 249 Ariz. 370, 373, ¶ 9 (2020).

## I.     The Immunity Clause of Arizona's Constitution

¶8 Arizona's Constitution directs that "[t]he legislature shall direct by law in what manner and in what courts suits may be brought against the state." Ariz. Const. art. 4, pt. 2, § 18 ("immunity clause"). The

State argues that the bifurcation provision falls within the legislature's power under the immunity clause. We agree.

**¶9**     A prominent dictionary in use when the immunity clause was adopted defines "manner" as "method; mode of action." *Manner*, New Websterian Dictionary (1912); *see also Matthews v. Indus. Comm'n of Ariz.*, 254 Ariz. 157, 175, ¶ 36 (2022) (citing the New Websterian Dictionary with approval). The Black's Law Dictionary from that time explains that "[manner] is a word of large signification, but cannot exceed the subject to which it belongs." *Manner*, Black's Law Dictionary (2d ed. 1910); *see also State ex. rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 131–32, ¶ 15 (2020) (approving of the use of Black's Law Dictionary to interpret statutes). The term "suit" is defined as "petition or prayer" and "an action or process at law for the recovery of a right to a claim." *Suit*, New Websterian Dictionary (1912). The plain language of the statute indicates that the legislature's power under the immunity clause extends to directing the trial procedure after a petitioner brings an action against the state.

**¶10**     Early Arizona cases addressing the immunity clause focused on the legislature's power to abrogate sovereign immunity and permit suits against the state. *See, e.g.*, *State v. Miser*, 50 Ariz. 244, 256 (1937) (noting that the legislature allowed claimants to bring suits against the state only after specified "terms and conditions" had been satisfied); *State v. Angle*, 56 Ariz. 46, 50 (1940) (observing that the legislature authorized persons to bring contract and negligence-based claims against the state). But we have seldom analyzed statutes that guide how "suits may be brought against the state" after a complaint has been filed. Ariz. Const. art. 4, pt. 2, § 18.

**¶11**     The immunity clause "confers [express authority] upon the legislature to define those instances in which public entities and employees are entitled to immunity." *Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 203, ¶ 25 (2001). And we have endorsed the legislature's exercise of that authority in directing "the time within which suits against the state must be commenced," *Rogers v. Bd. of Regents of Univ. of Ariz.*, 233 Ariz. 262, 269, ¶ 25 (App. 2013) (quotation omitted), and the venue where the suit must be litigated, *Landry v. Superior Court*, 125 Ariz. 337, 338 (App. 1980). The change of venue statute, like the bifurcation provision, removes discretion from the superior court and sets forth the procedural rules that must be followed when a complaint is filed against the state. *Compare* A.R.S. § 12-822(B), *with* A.R.S. § 12-820.03(B). *See also State v. Superior Court (Hooley)*, 120 Ariz. 273, 274 (1978) (change of venue statute is mandatory); *Dunn v. Carruth*, 162 Ariz. 478, 480 (1989) (the immunity clause phrase "in what courts" relates to the legislature's power to designate venue).

¶12　　　　Morales argues that, even if the immunity clause granted the legislature power to make procedural rules governing "suits against the state," the people abrogated that legislative authority by adopting Article 6, § 5(5), which gave our supreme court procedural rulemaking authority ("rulemaking clause"). *See* Ariz. Const. art. 6, § 5(5) (adopted via initiative in 1960). But "[i]t is an established axiom of constitutional law that where there are both general and specific constitutional provisions relating to the same subject, the specific provision will control." *Clouse*, 199 Ariz. at 199, ¶ 11 (quotation omitted).

¶13　　　　The rulemaking clause grants our supreme court authority to create procedural rules for courts generally. Ariz. Const. art. 6, § 5(5) ("The supreme court shall have . . . [p]ower to make rules relative to all procedural matters in any court."). The immunity clause grants the legislature authority to direct the manner in which suits can be brought in a specific and limited circumstance; namely, when they are brought against the government. *See* Ariz. Const. art. 4, pt. 2, § 18. And our supreme court recognizes that the legislature can enact statutes implementing procedural rules that do not conflict with the supreme court's rules. *Duff v. Lee*, 250 Ariz. 135, 138, ¶ 12 (2020).

¶14　　　　The text of the immunity clause does not prohibit the legislature from directing the trial process for suits brought against the state. The bifurcation provision is a proper exercise of the legislature's authority to direct the "manner" in which "suits may be brought against the state."

## II.　　Conflict Between the Statute and the Rule

¶15　　　　Morales argues that the bifurcation provision in Section 12-820.03(B) engulfs Arizona Rule of Civil Procedure ("Rule") 42 and infringes on our supreme court's procedural rulemaking authority. Because the legislature has special authority to "direct by law in what manner . . . suits may be brought against the state," a conflict between the statute and rule would not invalidate the bifurcation provision. But even if the legislature lacked that special authority, the statute and rule do not conflict.

¶16　　　　To determine whether a statute infringes on our supreme court's procedural rulemaking authority, we evaluate whether (1) there is a conflict between the statute and the rule, and (2) the statute is a substantive or a procedural law. *State v. Brearcliffe*, 254 Ariz. 579, 585, ¶ 21 (2023). "We do not hastily find a clash between a statute and court rule," *Graf v. Whitaker*, 192 Ariz. 403, 406, ¶ 11 (App. 1988), and where possible we "avoid

interpretations that unnecessarily implicate constitutional concerns," *Scheehle v. Justices of the Sup. Ct. of Ariz.*, 211 Ariz. 282, 288, ¶ 16 (2005). "[I]n the event of irreconcilable conflict between a procedural statute and a rule, the rule prevails." *Duff*, 250 Ariz. at 138, ¶ 12 (quotation omitted).

¶17　　According to the bifurcation provision, "the issue [of whether the affirmative defense applies] shall be resolved by a trial before and separate and apart from a trial on damages." A.R.S. § 12-820.03(B). The applicable rule for bifurcation states that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Rule 42(b).

¶18　　As noted above, the legislature has specific authority to guide the procedural manner in which suits are brought against the state. And the legislature "may properly enact statutory procedures that supplement, rather than conflict with," our supreme court's procedural rules. *Brearcliffe*, 254 Ariz. at 584–85, ¶ 21.

¶19　　The bifurcation provision and Rule 42 do not conflict. The former is a more specific procedural direction within the broader framework of the latter. And both advance the same purposes. The plain language of Rule 42 specifies that one of the purposes of providing the court with discretion to bifurcate a trial is "to expedite and economize" litigation and preserve both judicial and litigant resources. Rule 42(b). In *Swofford v. B & W, Inc.*, a federal district court considered the propriety of a separate trial under Fed. R. Civ. P. 42(b)—which Arizona's current Rule 42 mirrors, although not identically—and observed that "[a] preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expense to the parties." 34 F.R.D. 15, 20 (S.D. Tex. 1963). The court also noted that a separate trial on liability may offer parties the opportunity to settle without having reached the often-arduous question of damages. *Id.*

¶20　　The bifurcation provision similarly serves the interests of judicial economy and efficiency by directing the earliest possible determination of the State's protection under the affirmative defense provision. The legislature's command that the superior court must proceed most efficiently in suits against the State does not conflict with the court's general authority and discretion to bifurcate trials for the sake of efficiency.

**CONCLUSION**

¶21　　　　　We accept special action jurisdiction and deny relief. We affirm the superior court's bifurcation order.



AMY M. WOOD • Clerk of the Court
FILED: 　AA

7